UNITED STATES, Appellee

v

TERRY R. JACKSON, Seaman Apprentice, U. S. Navy, Appellant

16 USCMA 509, 37 CMR 129

No. 19,732

February 10, 1967

*Lieutenant Colonel Paul F. Henderson, Jr.*, USMC, argued the cause for Appellant, Accused.

*Lieutenant (jg) Edward A. Infante*, USNR, argued the cause for Appellee, United States. With him on the brief was *Colonel J. E. Hanthorn*, USMC.

FERGUSON, Judge:

Socks, humblest item of our apparel, would not seem to offer themselves as a fruitful source of crime. True, they might be stolen and their taker duly convicted of the theft. But, in the main, socks seem confined to their traditional role of easing the foot's contact with abrasive leather or, on the distaff side, adorning a graceful limb and coquettishly drawing our male attention. In the armed services, however, uniforms are essential for purposes of recognition and discipline and perhaps, if the innermost recesses of our hearts are probed, also to satisfy a touch of the peacock.

In the Navy, we are informed that black socks are an essential part of every uniform, save one—a white tropical item, with which white knee stockings are worn. Nevertheless, the accused, returning from a twenty-four day unauthorized absence, appeared on board his ship wearing white socks, at the very minute of terminating his French leave. Hence, he was charged, in addition to absence without leave, in violation of Uniform Code of Military Justice, Article 86, 10 USC § 886, with the following specification, in breach of the provisions of Code, supra, Article 134, 10 USC § 934.

"In that JACKSON, Terry R., 686 29 72, Seaman Apprentice, U. S. Navy, USS AEOLUS (ARC-3), did, on or about 1235 hours, 27 April 1966, wrongfully appear on board USS AEOLUS (ARC-3), wearing white socks."

Following his plea of guilty to both charges, Jackson was sentenced to bad-conduct discharge, confinement at hard labor for six months, forfeiture of $90.00 per month for six months, and reduction. With a reduction in the amount of the forfeitures, intermediate appellate authorities affirmed. The accused duly sought relief from this Court, and we granted his petition on the issue whether the above specification alleges an offense.

The Government urges the count fairly sets forth the offense of wearing an improper uniform and argues it follows the form specified in the Manual for Courts-Martial, United States, 1951, appendix 6c. That form, however, provides for alleging accused appeared on board the vessel in question "(without his ———) (in an unclean ———) (with an unclean ———) (———)." Manual, supra, page 494. As such, the form itself would seem to imply the necessity for alleging the requirement to appear in a proper uniform and the circumstances which rendered improper that in which he was clad. In short, as we have so often stated, a specification must expressly set forth each essential element of the offense charged or use language which necessarily implies their existence. United States v Sell, 3 USCMA 202, 11 CMR 202; United States v Sadinsky, 14 USCMA 563, 34 CMR 343; United States v Fleig, 16 USCMA 444, 37 CMR 64. Moreover, it was succinctly declared in United States v Strand, 6 USCMA 297, 20 CMR 13, at page 301:

"Merely completing the blanks in a particular form of specification set out in the Manual for Courts-Martial, United States, 1951, does not guarantee a legally unassailable charge. The specification must set out every essential element of the offense, either directly or by necessary implication."

If the accused is to be charged with wearing an improper uniform, the count must so allege and delineate in what respect it was improper. Thus, in United States v Crooks, 12 USCMA 677, 31 CMR 263, we pointed out the necessity for a specification to aver wherein a uniform regulation was violated, even though reference was made therein to the regulation itself. In that case, it was alleged accused violated the regulation by appearing in a public establishment, dressed in a field uniform. The regulation, however, pertinently provided only that the field uniform would not be worn off base. We said, at page 679:

". . . Since the specification does not contain any indication, directly or by fair implication, that the public establishment, which is not further described in the specification, was outside military installations, it does not state facts sufficient to show a violation of the order."

Here, the specification simply alleges accused "wrongfully" appeared on board his ship wearing white socks. No reference is made to any regulation prohibiting such items of apparel, nor, indeed, to whether he was wearing a naval uniform. The mere addition of words of criminality such as "wrongful" to a specification does not in itself convert the specified act into an offense. Manual, supra, paragraph 28a(3). From what is alleged here, we are left to speculate whether accused violated any service directive regarding proper uniforms, for, surely, white socks may be worn with civilian clothing and, indeed, as the Government concedes, with at least one naval uniform. Cf. United States v Sweitzer, 14 USCMA 39, 33 CMR 251; United States v Sutton, 3 CMR 659. We necessarily conclude, therefore, that the specification fails to set forth the offense of wearing an improper uniform, in violation of Code, supra, Article 134.

The remaining offense to which accused pleaded guilty will not legally support the bad-conduct discharge here adjudged and approved. Manual, supra, paragraph 127c. Although evidence of two previous convictions appears in the record, the president made no reference in his sentence instructions to them as a basis for additional punishment. Cf. United States v Hutton, 14 USCMA 366, 34 CMR 146; United States v Geter, 15 USCMA 209, 35 CMR 181; United States v Toney, 16 USCMA 296, 36 CMR 452. Under the circumstances, therefore, we deem it appropriate to return the case for disapproval of the punitive discharge or a rehearing on the sentence.

The findings of guilty of Charge II and its specification are set aside, and Charge II is ordered dismissed. The decision of the board of review is reversed, and the record of trial returned to the Judge Advocate General of the Navy. The board may disapprove so much of the sentence as relates to the punitive discharge, or order a rehearing thereon.

Chief Judge QUINN and Judge KILDAY concur.