**UNITED STATES**

**v.**

**Airman First Class Henry H. HOOPER,
FR 173–48–7163, United States
Air Force.**

**ACM S24544.**

U. S. Air Force Court of Military Review.

28 Feb. 1978.

Appellate Counsel for the Accused: Mr. Donald W. Brewer, Damerham, Fordingbridge, Hampshire, England, Colonel B. Ellis Phillips and Captain Thomas S. Markiewicz, Captain Michael Donnelly filed a brief on behalf of the accused.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., Major Alvin E. Schlechter and Major Gilbert J. Regan.

Before EARLY, ORSER and ARROWOOD, Appellate Military Judges.

DECISION

ORSER, Judge:

Tried by a special court-martial, with members, the accused was convicted, contrary to his pleas, of conspiracy to violate a general regulation and for violating that same regulation by participating in the substantive offense which was the object of the conspiracy, i. e., the burning of a wooden cross on the Air Force installation at Lakenheath, England, in violation of Articles 81 and 92 of the Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892. The approved sentence is a bad conduct discharge and reduction to the grade of airman basic.

Although the initial issue of appellate focus concerns the legal sufficiency of the two specifications, our discussion will be more meaningful if we first detail the relevant facts. Thus, evidence adduced by the government established that on the night of 14 February 1977, the accused and several other airmen were socializing in the barracks room of one of the group. In the course of conversation, the fact that it was "Black History Week" was briefly discussed and one of the airmen commented that a cross burning had occurred at his prior duty station. Later in the evening, an Airman Popp canvassed all those present to ascertain if they were willing to burn a cross.

The accused and several others indicated they were willing to participate in the venture. Thereafter, the parties obtained wood and gasoline, (the latter item being obtained by the accused) and a cross was constructed and installed on the base football field. Around midnight the structure was ignited. The record indicated the parties treated the project as a prank or a joke.

The burning object was witnessed by a black staff sergeant as he drove home from duty through fog in the early morning hours of 15 February 1977. Upon approaching the object he recognized it to be a cross. According to the sergeant, another person, identity unknown, approached and stated he had observed the burning cross from his barracks room. He indicated he

had notified the fire department. Shortly thereafter, fire and security police personnel arrived at the scene and the fire, which had just about burned itself out, was promptly extinguished.

During trial, the military judge judicially noted for the court members that the burning of a cross is a symbol of the Ku Klux Klan (KKK), an organization which is, in general, racist and whose aims include the repression of minority groups, particularly Jews, Catholics, the foreign-born and Negroes. In his charge to the court, the military judge instructed the members that the accused could be found guilty of violating the regulation even though he did not at the time personally believe in or support the beliefs of the KKK, provided they were convinced beyond a reasonable doubt of the elements of the offenses.

The challenged conspiracy specification reads, in pertinent part, as follows:

In that [the accused] . . . did conspire with . . . to commit an offense under the Uniform Code of Military Justice, to wit: the burning of a wooden cross on RAF Lakenheath, England, in violation of paragraph 3e(1) and 3e(3) of Air Force Regulation 35–15, dated 12 June 1970, and in order to effect the object of the conspiracy the . . . [accused] did . . . acquire a quantity of gasoline to be used as fuel to ignite the cross.

The Article 92 specification contains the following relevant language:

In that [the accused] . . . did, at RAF Lakenheath, England, . . . violate a lawful general regulation, to wit: paragraph 3e(1) and 3e(3), Air Force Regulation 35–15, dated 12 June 1970, by participating in the burning of a wooden cross.

The cited general regulation is entitled "Dissident and Protest Activities." According to its preamble, the purpose of the Air Force directive is to state "policies, prohibitions and guidelines" for handling the kind of activities described in the title.[1] The specific paragraphs of the regulation cited in the specifications contain the following pertinent language:

3e(1). Demonstrations or other activities[2] within an Air Force installation which could result in interference with or prevention of orderly accomplishment of a mission of the installation or which present a clear danger to loyalty, discipline or morale of members of the Armed Forces are prohibited.

. . . . .

3e(3). Members of the Air Force are prohibited from participating in demonstrations when:

. . . . .

(b) In a foreign country.

. . . . .

(d) Their activities constitute a breach of law and order.

(e) Violence is likely to result.

## I.

In their excellent brief, and as masterfully argued before us by the accused's individual counsel, appellate defense counsel contend the specifications are fatally deficient because the cross burning conduct alleged, in the absence of any allegation showing such act to be a manifestation of public protest and dissent, was not, in the language of the directive, such a "demonstration" as would fall within the ambit of the prohibitions contained in Air Force Reg-

1. In *Culver v. Secretary of the Air Force*, 182 U.S.App.D.C. 1, 559 F.2d 622 (1977), the Court ruled that the regulation's prohibition against Air Force personnel participating in demonstrations in foreign countries was not unconstitutionally vague or overbroad.

2. We agree with appellate defense counsel that the phrase "other activities" used in the regulation, like the conjunctively used "demonstra-

tions," was intended by the drafters to embrace various forms of public protest and dissent by individuals or groups of individuals. The regulation is plainly protest and dissent oriented. Additionally, paragraph 3e(1) is entitled "Demonstrations and Similar Activities." See *United States v. Baker*, 18 U.S.C.M.A. 504, 40 C.M.R. 216 (1969), for its discussion of the principles of statutory construction.

ulation 35–15. Counsel further maintain that the specifications are otherwise inadequate to allege either a conspiracy to violate or a violation of the cited directive, because they include no allegation that the cross burning conduct was accompanied by or presented any of the adverse consequences set out in paragraph 3e(1) of the Air Force regulation as an essential basis for conviction.

Counsel reason that as the burning of wooden crosses is not specifically proscribed by the regulation, a demonstration or similar activity, of whatever kind, cannot be violative of the directive unless such conduct involves one of the contemplated adverse consequences, i. e., interference with or prevention of orderly accomplishment of a mission of the installation or a clear danger to loyalty, discipline or morale of members of the armed forces. Thus, they say, the existence of one or more of the foregoing conditions constitutes an essential element of any violation of the regulation and must be alleged.

■ With due consideration to counsel's argument and supporting authority, we are satisfied that the specifications, as drawn, are legally sufficient. The gravamen of an Article 92, Code, supra, charge is the violation of a regulation. Accordingly, a specification is generally sufficient where, as here, it identifies the operative provisions of the applicable regulation and recites the conduct which is violative thereof. *United States v. Bunch,* 3 U.S.C.M.A. 186, 11 C.M.R. 186 (1953); *United States v. Simpson,* 2 U.S.C.M.A. 493, 9 C.M.R. 123 (1953); *United States v. Stepp,* 48 C.M.R. 813 (A.C. M.R. 1974). Such specific conditions as must be present to constitute a violation are considered to be imported in the specification. See *United States v. Edell,* 49 C.M.R. 65 (A.C.M.R. 1974).

■ Moreover, only one of the instant specifications charges the violation of a regulation. As indicated, the other alleges an agreement to participate in the conduct violative of the regulation involved in the Article 92 offense. As both the United States Supreme Court and the United States Court of Military Appeals have observed, in a conspiracy charge the illicit agreement is the gist of the offense. It is, therefore, not essential to the validity of such a charge that the offense which constitutes the object of the agreement be set forth with great technical precision. *Wong Tai v. United States,* 273 U.S. 77, 43 S.Ct. 300, 71 L.Ed. 545 (1927); *United States v. Irwin,* 22 U.S.C.M.A. 168, 46 C.M.R. 168 (1973).

■ In the case of *United States v. Sell,* 3 U.S.C.M.A. 202, 11 C.M.R. 202, 206 (1953), the United States Court of Military Appeals perhaps most succinctly expressed the general rule of pleading sufficiency in modern military practice:

> The true test of the sufficiency of . . . [a specification] is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

One implicit indication in *Sell* is that the mere compliance with the model specification forms set forth in Appendix 6c of the Manual for Courts-Martial, 1969 (Rev.), is no guarantee of a legally unassailable charge. *United States v. Strand,* 6 U.S.C. M.A. 297, 20 C.M.R. 13 (1955). Time and again the Court of Military Appeals has stressed the quintessential requirement that the pleading must set out every essential element of the offense charged or at least include language which necessarily implies their existence. See, e. g., *United States v. Jackson,* 16 U.S.C.M.A. 509, 37 C.M.R. 129 (1967); *United States v. Fleig,* 16 U.S.C. M.A. 444, 37 C.M.R. 64 (1966); *United States v. Sadinsky,* 14 U.S.C.M.A. 563, 34 C.M.R. 343 (1964).

In significant support of their contention of specification inadequacy, appellate defense counsel advance the case of *United States v. Crooks,* 12 U.S.C.M.A. 677, 31

C.M.R. 263 (1962). In *Crooks,* the accused was charged with violating a regulation which forbade the wear of the field uniform "outside of military installations," by a specification which only alleged he wore one "in a public establishment." In its analysis, the Court of Military Appeals found it significant that the regulation did not state a general prohibition against the wearing of field uniforms, with specified exceptions. Instead, the thrust of the directive was the banning of such attire outside military installations, which condition was not synonymous with wearing the uniform in a public place, as alleged. After noting that other provisions of the regulation acknowledged that some public places were located on the post, the Court found that the specification did not contain any indication, either explicitly or implicitly, that the public establishment was outside the post, and, thus, stated insufficient facts to show a violation of the order.

*Crooks,* therefore, is authority for the proposition that when an Article 92 violation does not include a directive of general prohibition, it is necessary to plead the offense with greater particularity than otherwise, in order to provide a sufficient showing that the accused's conduct is violative of the order. The *Crooks* result appears in conflict with that in *United States v. Bunch* and *United States v. Simpson,* both supra. The latter cases support the principle that since the gravamen of an Article 92 charge is the violation of an order, it is permissible to assume the specification imports the conditions which must be present for a violation to occur. We find it unnecessary to attempt a detailed reconciliation of *Crooks* with *Bunch* and *Simpson,*[3] for, in our opinion, the case of *United States v. Gohagen,* 2 U.S.C.M.A. 175, 7 C.M.R. 51 (1953), which involved a regulation of general prohibition, (and was cited in *Crooks* for, perhaps, its contrasting value) highlights a significant distinction between *Crooks* and the case at hand.

In *Gohagen,* the charge alleged a violation of a regulation that prohibited the possession of instruments for the administration of drugs. Excepted from the prohibition were instruments "for household use or the treatment of disease." In upholding the specification, the Court declared that in those circumstances it was unnecessary to allege that the act of the accused did not come within the exceptions to the proscribed conduct.

▮ Although *Gohagen* and the instant case are factually dissimilar, both involve directives expressed in terms of general prohibitions against specified conduct. In this case, therefore, if the cross burning conduct of the accused falls within the terms of the regulation, the Article 92 specification and, perforce, the conspiracy specification,[4] adequately spell out violations, without need to set forth the operative terms of the regulation *haec verba.* See *United States v. Hogsett,* 8 U.S.C.M.A. 681, 25 C.M.R. 185 (1958); *United States v. Milldebrandt,* 8 U.S.C.M.A. 635, 25 C.M.R. 139 (1958).[5]

---

3. In *United States v. Edell,* 49 C.M.R. 65 (A.C. M.R. 1974), and again in *United States v. Stepp,* 48 C.M.R. 813 (A.C.M.R. 1974), the Army Court of Military Review recognized the conflict in the cited cases, but found it unnecessary to reconcile them for purposes of disposition.

4. Our inclusion of the conspiracy specification assumes arguendo that in the unique pleading circumstances of this case the earlier discussed economy of pleading rule in charging conspiracies is here inapplicable.

5. This distinction was discerned by the staff judge advocate to the special court-martial authority in a "memorandum of law" he submitted for the consideration of the staff judge advocate who authored the post-trial review. In passing, we record our disagreement with a collateral claim by appellate defense counsel that the review and the action of the convening authority were tainted by the referenced memorandum. It is true, as contended, that the author of the memorandum was disqualified from participating in the review of the case because of a grant of immunity extended to the chief prosecution witness by their superior, the Commander, Headquarters, United States Air Forces in Europe. See *United States v. Sierra-Albino,* 22 U.S.C.M.A. 63, 48 C.M.R. 534 (1974); *United States v. Dickerson,* 22 U.S.C.M.A. 489, 47 C.M.R. 790 (1973); *United States v. Diaz,* 22 U.S.C.M.A. 52, 46 C.M.R. 52 (1972); *United*

We readily find that it does. The cross burning was, of course, alleged to have occurred in England, a foreign country as specified in one of the two references to the directive. Furthermore, the public burning of a wooden cross is a widely known symbol of protest and dissent. The phenomenon of a fiery cross has been symbolic of racial and ethnic hatred for many years. We have no difficulty in concluding that such conduct constituted, in the language of the regulation, a "demonstration" which was potentially mission disruptive or a threat to the loyalty, discipline or morale of military personnel. We disagree with the defense position that a public assembly of some nature is a necessary constituent of a demonstration for purposes of the regulation. Conversely, we concur with appellate government counsel that the essential criterion is whether the demonstrative act of protest and dissent is manifested to the public; it is immaterial whether the demonstrators are physically present when the fruit of their mischievous conduct is made known.

We accordingly hold that the specifications are sufficiently specific to put the accused on notice of the regulation and portions thereof violated, and the specific conduct which constituted the violations. The specifications, as drawn, expressly and by fair implication, encompass all the essential elements of the offenses. *United States v. Bunch* and *United States v. Irwin,* both supra.

States v. James, 51 C.M.R. 357, 1 M.J. 487 (A.F.C.M.R. 1975); see also *United States v. Jones,* 2 M.J. 353 (A.F.C.M.R. 1976). However, although contact of the nature here involved is unusual and as a general rule should be avoided, we are satisfied by its content that the instant communication did not contaminate the integrity of the review process.

The underlying rationale for disqualification where immunity or clemency has been granted to prosecution witnesses concerns the prejudgment of such witnesses' credibility by superiors or subordinates. Here, as indicated by appellate government counsel, the correspondence has no relevance to such factor. The submission contains no comment or opinion concerning the factual sufficiency of the evidence or the credibility of witnesses. Rather, it consists chiefly of an analysis of the legal sufficiency of the specifications. The record indicates the

## II.

In the final allegation of error we consider in detail, appellate defense counsel claim:

THE MILITARY JUDGE ERRED BY ALLOWING INTO EVIDENCE, OVER DEFENSE OBJECTION, THE HEARSAY TESTIMONY OF AIRMAN MANCHESTER THAT AIRMAN FERGUSON HAD SAID THAT HOOPER LIT THE CROSS.

During trial, an Airman Manchester was permitted to testify, over defense objection, that when co-conspirator Ferguson returned to the barracks after the cross had been ignited, he declared to those present that the accused had "lit the fire." As appellate defense counsel point out, that statement, the only evidence in the case that directly identified the accused as the active perpetrator of the cross burning, constituted hearsay of a most palpable kind. It was, therefore, inadmissible, unless its admissibility was justified under a recognized exception to the hearsay rule.

All counsel agree that the only legitimate hearsay exception conceivably applicable in the circumstances is that relating to statements of co-conspirators. That exception to the rule is described in the Manual for Courts-Martial, supra, paragraph 140b, in the following terms:

A statement, including non-verbal conduct amounting to a statement, made by

referral staff judge advocate submitted the memorandum and cover letter (both of which are devoted to the adequacy of the specifications) upon learning that one of the reviewing staff judge advocate's assistants had made a preliminary determination that the specifications were legally deficient. The memorandum amounts to a technical defense of the specifications (by their author, presumably) for the staff judge advocate's consideration; it was not intended for the convening authority. At his urging, the individual defense counsel was furnished a copy of the correspondence in addition to the post-trial review. The record indicates he received the documents in a timely manner to permit such challenge or comment he wished to submit pursuant to *United States v. Goode,* 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975).

one conspirator *during the conspiracy and in pursuance of it* is admissible in evidence for the purpose of proving the truth of the matters stated against those of his co-conspirators who were parties to the conspiracy at the time the statement was made or who became parties to the conspiracy thereafter. *The statement is not admissible merely because it was made while the conspiracy was existing; it must, to be admissible under this rule, have been made in pursuance of the conspiracy.* (Emphasis supplied).

The record shows that the military judge admitted the challenged testimony on the basis of the foregoing provision of the Manual and his conclusion that the statement was made during and in pursuance of the conspiracy. Upon careful consideration of the statement, the attendant circumstances, and applicable principles of law, we concur with the appellate defense position that the statement was erroneously received in evidence.

 It is well settled that a conspiracy ends when the objectives thereof are accomplished, if not earlier by abandonment of the aims or when any of the members of the joint enterprise withdraw therefrom. *United States v. Beverly,* 14 U.S.C.M.A. 468, 34 C.M.R. 248 (1964); *United States v. Salisbury,* 14 U.S.C.M.A. 171, 33 C.M.R. 383 (1963); *United States v. Miasel,* 8 U.S.C.M.A. 374, 24 C.M.R. 18 (1957). It is equally the law, in harmony with the quoted Manual provision, that a declaration of one conspirator to be admissible against the others must be made while the conspiracy is still in progress. *Lutwak v. United States,* 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953); *Krulewitch v. United States,* 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); *Fiswick v. United States,* 329 U.S. 211, 64 S.Ct. 224, 91 L.Ed. 196 (1946); *United States v. Salisbury,* supra.

 We agree with appellate defense counsel that there is nothing in the record even remotely suggesting the instant conspiracy contemplated anything beyond the erection and ignition of a wooden cross. Furthermore, the record clearly indicates

that such singular aim was accomplished·at some point in time before Ferguson returned to the barracks and reported the accused's participation. In that regard, the record shows that prior to Ferguson's announcement other co-conspirators had returned to the barracks and one had stated the cross was burned.

We find no merit in the appellate government counsel's position that the reassembly of the co-conspirators following the cross burning was an *implied* ingredient of the conspiracy. The prevalent rule is that there is normally no *implied* though uncharged continuing agreement beyond the terms shown by the evidence. *Lutwak v. United States; Krulewitch v. United States; United States v. Salisbury,* all supra. Here, the evidence provides no basis to infer there was an implied agreement of any sort among the parties to the conspiracy to reassemble upon completion of their objective and "debrief" their achievement.

In any event, even if the evidence could in some manner be construed to indicate the conspiracy still had implied life when Ferguson delivered his declaration concerning the accused, that factor alone would not render the statement admissible. As the Manual for Courts-Martial plainly indicates, the additional prerequisite for admissibility is that the statement must have been made in "pursuance" or furtherance of the conspiracy. The meaning of this restrictive condition is well expressed in the case of *United States v. Nardone,* 106 F.2d 41, 43 (1939), *rev'd on other grounds,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939), cited by appellate defense counsel in their brief:

> [T]he fact that one conspirator tells another something relevant to the conspiracy does not alone make the declaration competent; the declaration must itself be an act in furtherance of the common object; mere conversation between the conspirators is not that . . . . .

The revelation that the accused was the conspirator who ignited the cross cannot rationally be shown to have contributed anything to the object of the instant conspiracy. It served no discernable purpose

of the agreement, for the singular goal had already been achieved, and all were quite aware of that achievement, by the time Ferguson made his announcement. As a matter of fact, Ferguson's disclosure was, if anything, counterproductive to any presumed continuing agreement to conceal the identities of the wrongdoers. Clearly, the statement had no qualifying relevance to the conspiracy and it was, thus, erroneously considered by the court.

We further conclude that consideration of this evidence was prejudicial to the accused with respect to the Article 92 substantive offense. Ferguson's announcement, recounted by Manchester from the witness stand, directly linked the accused to active participation in the cross burning. As appellate defense counsel aptly note, it was the only evidence before the court that placed the accused at the scene of the offense. Absent that evidence, we cannot say with acceptable assurance that the court members would have found the accused guilty of the offense—even granting that in a technical sense his complicity in the offense might well be sustainable solely on the basis of his established involvement in the conspiracy. See Manual for Courts-Martial, supra, paragraphs 156 and 160. Having carefully considered all the circumstances, we are left with serious doubt as to whether the erroneously admitted statement exerted substantial influence on the guilty verdict. See *Krulewitch v. United States,* supra.

■ Conversely, we are convinced the error did not prejudice the accused as to the conspiracy charge. The evidence as to that offense, though it was supplied entirely by the testimony of Manchester, is, in our view, compelling. Moreover, the erroneously considered hearsay was not directly related to the proof of the elements of the conspiracy offense. Although, as appellate defense counsel claim, Manchester's credibility was of crucial significance in the case,

we do not find that the inadmissible hearsay served to bolster the witness' credibility with respect to the conspiracy. Although he testified under a grant of immunity, there is no indication save his presence when the agreement was made, that Manchester was an accomplice of the accused in the offenses. His testimony impresses us as being certain, uncontradictory, and believable; and of special significance, it stands uncontroverted in the record. We are accordingly satisfied that the inadmissible hearsay declaration of the accused's active role in the cross burning constitutes harmless error with respect to the conspiracy conviction.

The remaining assertions of error are either without merit or their resolution rendered unnecessary in view of our disposition of the case.[6] For the reasons stated, the findings of guilty of the Article 92 substantive offense (Charge II and its specification), and the sentence, are hereby set aside. The findings of guilty of the conspiracy offense (Charge I and its specification) are affirmed. The record of trial is returned to The Judge Advocate General, United States Air Force, for referral to an appropriate convening authority for a combined rehearing. Manual for Courts-Martial, supra, paragraphs 81*b*(3), 81*d*(1), and 92*a*.

EARLY, Chief Judge, and ARROWOOD, Judge, concur.

---

6. One item concerning the post-trial review bears noting. In his justification for the hearsay testimony of Manchester, the staff judge advocate referred to evidence indicating that after the cross burning there was an anonymous telephone threat to the security police. We find no competent evidence concerning such a threat in the record of trial to justify its inclusion in the review.