UNITED STATES, Appellee,

v.

Staff Sergeant Anthony W. LAWLESS,
U.S. Air Force, Appellant.

No. 44551.

ACM S25501.

U.S. Court of Military Appeals.

July 23, 1984.

For Appellant: *Major Alexander S. Nicholas* (argued and reargued); *Colonel George R. Stevens* and *Colonel Leo L. Sergi* (on briefs).

For Appellee: *Major Michael J. Hoover* (argued and reargued); *Colonel Kenneth R. Rengert* (on briefs).

*Opinion of the Court*

FLETCHER, Judge:

Following review of appellant's special court-martial,[1] we granted two issues for consideration:

### Specified Issue

WHETHER THE DISCOVERY OF THE COMMISSION OF A CRIME, WHILE IN THE COURSE OF AN ILLEGAL SEARCH, MAY PROPERLY BE USED TO OBTAIN WITNESSES WHO CAN TESTIFY ABOUT THE ACCUSED'S PERPETRATION OF THE CRIME.

### Granted Issue

WHETHER, IN A PROSECUTION FOR DRUG POSSESSION WITH INTENT TO DISTRIBUTE, DIRECT TESTIMONY THAT THE ACCUSED POSSESSED DISTRIBUTION PARAPHERNALIA IN THE HOME OF THE WITNESS SHOULD BE STRICKEN ON MOTION WHEN THE WITNESS REFUSES TO ANSWER QUESTIONS PERTAINING TO THE OWNERSHIP OF THE PARAPHERNALIA.

We turn, first to the perimetric facts. At about 11:00 p.m. on June 20, 1981, Sergeant John Kerrigan and Airman Joseph Arico were on foot patrol in the enlisted housing area of McGuire Air Force Base. As they cut across the yard of the quarters occupied by Senior Airman Jerome and Sergeant Valerie Marx, Kerrigan smelled burning marihuana coming from the house, approximately 15 to 20 feet away. In the window was a shade open about three to five inches; all the other windows were closed and shaded. Kerrigan and Arico went to that open window and looked inside. The accused and another individual were sitting in the living room, and the other individual was smoking a water pipe.

Kerrigan contacted Staff Sergeant Charles Forbis, also a Security Policeman, living in the housing area. Forbis returned to the house with Kerrigan and there saw the accused using a scale and tray while subdividing a quantity of marihuana into small plastic bags. These three policemen apprehended everyone in the house, including the later government witnesses, Jerome and Valerie Marx. A search authorization was obtained based on what had been seen through the window, and the ensuing search resulted in additional contraband being seized.

During trial, the military judge ruled that three separate searches had been conducted: The first when Kerrigan and Arico looked inside the house; the second when Forbis later returned with them and looked inside; and the third when the house was searched pursuant to authorization. He held the first search was lawful as being permitted under exigent circumstances, but the second and third were unlawful. Suppressed was the evidence seized as a result of the last two searches.

Pursuant to testimony at trial, it was shown that during the evening of June 20,

---

1. Contrary to his pleas, appellant was convicted of possession of some marihuana with intent to distribute, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to a bad-conduct discharge, confinement for 4 months, forfeiture of $250.00 pay per month for 4 months, and reduction to pay grade E-1. The convening and supervisory authorities disqualified themselves from acting on the case because clemency had been extended prior to this trial to two government witnesses in connection with their agreement to testify against the accused. On March 5, 1982, the substitute supervisory authority shortened the period of confinement to 2 months and 29 days, but otherwise approved the adjudged sentence. The Court of Military Review affirmed the approved sentence on June 30, 1982. 13 M.J. 943.

1981, the accused arrived at the house carrying a brown paper bag. This contained a clear plastic bag enveloping "a brownish-green leafy substance with stems and seeds." Both Jerome and Valerie Marx identified the substance as marihuana. Jerome Marx indicated he had seen marihuana approximately 100 times in the past, both in civilian life and while on active duty. Mrs. Marx was a narcotics dog handler and had seen marihuana almost daily for two years. Both received nonjudicial punishment for drug abuse occurring on June 20, 1981.

During trial, both Jerome Marx and Valerie Marx testified as government witnesses. On cross-examination Jerome Marx refused to answer questions regarding the source of plastic bags and a tray used to divide the marihuana. The military judge refused to strike the direct testimony after this invocation of the fifth amendment. Valerie Marx also testified extensively regarding the accused's possession of marihuana. The defense called no witnesses of its own with respect to the charged offense.

I

The issue specified for review by this Court is somewhat misleading. The ultimate question to which the specified issue pertains is whether the trial judge erred in permitting Senior Airman and Mrs. Marx to testify as government witnesses against appellant at this court-martial. In deciding this question, we must determine whether the discovery of the identity of these witnesses and their testimony was a product of an illegal search (*see United States v. Waller*, 3 M.J. 32 (C.M.A. 1977)), and whether appellant could object to their testimony on this basis.[2] The resolution of either issue against appellant would lead us to conclude that the trial judge did not err

in admitting the testimony of these government witnesses.

■ The military judge found that the police officers acted properly when they initially walked across the Marxs' lawn and peered into the partially drawn window. He ruled that their smelling of burning marihuana while on patrol justified this police conduct in view of exigent circumstances. *See United States v. Cunningham*, 11 M.J. 242, 246 (C.M.A. 1981); *United States v. Hessler*, 7 M.J. 9 (C.M.A. 1979). We are not inclined to upset this ruling by the trial judge. Accordingly, it is quite clear that the police lawfully observed ongoing criminal activity in the Marxs' house prior to any subsequent illegal activities on their part. *See United States v. Sanford*, 12 M.J. 170 (C.M.A. 1981).

■ In our opinion, the ownership of the house was a fact that could have been readily ascertained by the police officers if it was not already known to them at that time. *See United States v. Lawless*, 13 M.J. 943, 945 (A.F.C.M.R. 1982). It was inevitable that the identity of the Marxs as witnesses to criminal activity in their house on the night in question would have been discovered. *See United States v. Kozak*, 12 M.J. 389 (C.M.A. 1982); *see also Nix v. Williams*, —— U.S. ——, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). In addition, we note that the Marxs witnessed appellant's criminal conduct on their own initiative without regard to any police misconduct. Whether they would have come forward and told the police about this offense on their own initiative is doubtful but unknown. It is clear, however, that these witnesses, Senior Airman Marx and his wife, were in trouble for offenses committed in their house prior to the occurrence and police discovery of appellant's distribution offenses. In other words, the police initially saw appellant sitting in the room,

2. During oral argument, we specified the following issue for review:
WHETHER UNDER THE CIRCUMSTANCES OF THIS CASE AND THE DECISIONS OF THE UNITED STATES SUPREME COURT IN RAKAS V. ILLINOIS, 439 U.S. 128 [99 S.Ct.

421, 58 L.Ed.2d 387] (1978), AND RAWLINGS V. KENTUCKY, 448 U.S. 98 [100 S.Ct. 2556, 65 L.Ed.2d 633] (1980), THE ACCUSED MAY SUPPRESS THE EVIDENCE PRODUCED BY THE SEARCH HEREIN.

and another person smoking a water pipe and smelled marihuana burning in the Marxs' house. *See* Article 77(1), Uniform Code of Military Justice, 10 U.S.C. § 877(1) (principal). More than likely, they would have sacrificed appellant to protect themselves from any charges that stemmed from the earlier smoking of marihuana in their home. *See United States v. Kozak, supra.* In our view, the testimony of the Marxs as government witnesses was not impermissibly tainted by the subsequent police actions in this case which discovered additional criminal activity. *United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978).[3]

## II

■ The granted issue questions the military judge's refusal to strike Jerome Marx' testimony when he invoked his fifth-amendment privilege on cross-examination to refuse to answer questions about who supplied the accused with plastic bags and the tray used to divide the marihuana. Initially, Jerome Marx also refused to say whether he assisted the accused in weigh-ing and packaging the marihuana, but later answered he had not assisted the accused. We conclude that appellant was not prejudiced by this ruling.

Under Mil.R.Evid. 301(f)(2), a witness' testimony need not be stricken when he asserts his right to remain silent to questions relating to "purely collateral" matters. However, we need not evaluate this military judge's refusal to strike Jerome Marx' direct testimony. Here additional uncontroverted testimony from Valerie Marx was present in the record which supported the findings of guilty before us. Accordingly, even if Jerome Marx' testimony had been stricken, sufficient evidence of record existed to support this conviction. The accused was not harmed by Jerome Marx' refusal to answer two questions during cross-examination and, therefore, the granted issue is not meritorious.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT and Senior Judge COOK concur.

---

**3.** We have grave doubts whether appellant's rights under the fourth amendment were violated by the subsequent conduct of the police in this case. *See United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). The military judge erred to the extent he relied on Mil.R.Evid. 311 for the proposition that appellant's possessory interest in the seized drugs was sufficient to permit him to challenge an illegal search of the Marxs' house. *See Rakas v. Illi-nois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); Analysis of Rule 311, Appendix 18, Manual for Courts-Martial, United States, 1969 (Revised edition). Moreover, we are not convinced that the record established that appellant had a reasonable expectation of privacy in the Marxs' house and its curtilage. *Oliver v. United States,* —— U.S. ——, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); *see United States v. Sanford,* 12 M.J. 170, 174 (C.M.A. 1981).