**UNITED STATES, Appellee,**

v.

**Warren L. EVANS, Jr., Private First Class, U.S. Army, Appellant.**

No. 63,806.
CM 8901375.

U.S. Court of Military Appeals.

Argued January 10, 1991.

Decided September 30, 1991.

For Appellant: *Robert E. Cato, Esq.* (argued); *Lieutenant Colonel Russell S. Estey, Captain Brian D. Bailey,* and *Captain Lauren B. Leeker* (on brief).

For Appellee: *Captain Mark E. Frye* (argued); *Colonel Alfred F. Arquilla* and *Major Maria C. Fernandez* (on brief); *Captain Marcus A. Brinks* and *Captain James K. Reed.*

### Opinion of the Court
EVERETT, Senior Judge:

Contrary to his pleas, a general court-martial with officer and enlisted members convicted Evans of conspiracy to distribute cocaine (two specifications); distribution of cocaine (three specifications); solicitation to possess cocaine; and carrying a firearm during a drug-trafficking crime (three specifications). *See* Arts. 81, 112a, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 912a, and 934, respectively.[1] The

court-martial sentenced appellant to a dishonorable discharge, confinement for 25 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence; and the Court of Military Review affirmed in a short-form opinion dated November 8, 1989.

We granted review of three issues: Two concern the firearm offenses,[2] and the third (which we specified) questions whether the military judge erred in denying a defense motion to strike the testimony of a prosecution witness who, on self-incrimination grounds, declined to answer some questions on cross-examination.

### I

Chapter 44 of Title 18 of the United States Code is entitled "Firearms"; currently it consists of §§ 921 through 930. Section 924, entitled "Penalties," contains subsection (c) which, in its present form,[3] reads:

(c) (1) Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is *a short-barreled rifle, short-barreled shot-*

---

1. Of the numerous other specifications originally preferred against Evans under the same charges, some were dismissed after arraignment; others were dismissed by the military judge pursuant to the defense motion for a finding of not guilty at the end of the government evidence; and as to others, the court members returned findings of not guilty.

2.                           I
   WHETHER EACH FIREARM SPECIFICA-
   TION (4, 6, AND 7 OF CHARGE III) STATES
   AN OFFENSE.

   II
   WHETHER THE GOVERNMENT FAILED TO
   PROVE AN ESSENTIAL ELEMENT OF EACH
   FIREARM SPECIFICATION, NAMELY, THE
   EXISTENCE OF A DRUG TRAFFICKING
   CRIME DEFINED BY 18 USC § 924(c)(2).

3. Section 924(c) of Title 18 was amended slightly by legislation which took effect between the date of the offense alleged in specification 4 and the dates of the offenses alleged in specifications 6 and 7. *Compare* 18 USC § 924(c)(1) and (2) (1988) *with* 18 USC §§ 924(c)(1) and (2) (1986). The differences in language are immaterial for present purposes.

*gun to imprisonment for ten years, and if the firearm is* a machinegun, or *a destructive device,* or is equipped with a firearm silencer or firearm muffler, to imprisonment for *thirty* years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for *twenty* years, and if the firearm is a machinegun, *or a destructive device,* or is equipped with a firearm silencer or firearm muffler, to *life imprisonment without release.* Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried. No person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed herein.

(2) For purposes of this subsection, the term "drug trafficking crime" means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C. App.1901 et seq.).

(3) [defines crime of violence].

(Language in italics in (1) and language after the word "felony" in (2) added after November 18, 1988.)

Specification 4 of Charge III alleges that [appellant] did in the vicinity of Oak Grove Auto Parts, Route 41A, Oak Grove, Kentucky, on or about 8 November 1988, during and in relation to a drug trafficking crime, under the Uniform Code of Military Justice, to wit: distribution of cocaine, in violation of Article 112a, Uniform Code of Military Justice, did use and carry a firearm, to wit: a Browning 9mm automatic pistol, in violation of Title 18, United States Code, sections 924(c)(1) and (2).

Specification 6 is identical except that the place alleged is different; the date alleged is December 2, 1988; and the "drug trafficking crime" is also alleged to be "conspiracy to distribute cocaine, in violation of Article 81."

Specification 7 is identical with specification 6, except for the date—December 16, 1988—and the location.

After arraignment, the defense moved to dismiss the three firearm specifications on the grounds that they failed adequately to allege violations of the Uniform Code of Military Justice. The military judge denied this motion; and now we must determine whether his ruling was correct.

### A

The third clause of Article 134 of the Uniform Code, proscribing "crimes and offenses not capital," authorizes a court-martial to try a servicemember for the same conduct which would allow his trial in a federal district court. Thus, a servicemember who has committed a noncapital crime punishable under Title 18 of the United States Code or under other federal penal statutes—such as the Controlled Substances Act, 21 USC §§ 801 *et seq.*—is subject to court-martial for the misconduct. *Cf. United States v. Reichenbach,* 29 MJ 128 (CMA 1989). Accordingly, a servicemember is subject to court-martial for use of a firearm during any noncapital "drug trafficking crime" as defined by 18 USC § 924(c)(2).

Each of the three specifications now under attack alleges that Evans "during and in relation to a drug trafficking crime, under the Uniform Code of Military Justice, ... did use and carry a firearm." Technically these allegations do not comply with 18 USC § 924(c)(2)—which makes no reference to the Uniform Code of Military Justice. However, appellant's distribution of cocaine not only violated Article 112a of the Uniform Code of Military Justice—because it was committed by a servicemember—but also was a felony under 21 USC § 841(a)(1), which is among the penal stat-

utes specifically referred to in subsection (c)(2) of § 924.[4] Likewise, a conspiracy to distribute cocaine violates not only Article 81 of the Uniform Code but also 21 USC § 846.

It would have been desirable if each specification had referred to those sections of Title 21 which define the "drug trafficking crimes" which Evans had been committing while he used and carried a firearm. However, there was no claim that Evans was misled in his defense by the references in these three specifications to punitive articles of the Uniform Code of Military Justice prohibiting certain drug offenses instead of other federal penal statutes which prohibit the same misconduct. The facts alleged are far more important than the statutory citation, cf. *United States v. Sell,* 3 USCMA 202, 206, 11 CMR 202, 206 (1953). Moreover, there is no indication that Congress intended that, in a prosecution under § 924(c)(1), the Government would be required to show that the accused knew what statute defined the "drug trafficking crime" which he allegedly committed.

All three specifications were preferred under a Charge which cited Article 134 of the Uniform Code; and each specification expressly alleged a violation of 18 USC § 924(c)(1) and (2). Thus, Evans was placed on notice as to the statute on which the Government relied. Certainly in the absence of any complaint at trial or motion to make the specifications more definite, *see United States v. Watkins,* 21 MJ 208 (CMA 1986), we are convinced it was unnecessary for the specifications to track more closely the language of § 924(c)(2).[5]

**B**

■ To constitute a "drug trafficking" crime, the conduct involved must be that for which the accused "may be prosecuted in a court of the United States" —§ 924(c)(1). In this context, a court-martial is not a "court of the United States." [6]

■ One question, however, gives us pause: When Congress originally enacted 18 USC § 924(c)(1) in 1968 and when thereafter it amended the subsection from time to time, did it intend that the crimes punishable thereunder not come within the ambit of the third clause of Article 134? Certainly some of the sentencing provisions in § 924(c)—such as the mandatory terms of imprisonment and the prohibitions of probation, suspended sentences, concurrent sentences, and parole—are intertwined with sentencing in the Federal district courts and would not fit well with sentencing in courts-martial. Thus, it could be argued that Congress must not have intended for § 924(c) to be incorporated into

4. Section 841(a)(1) of Title 21 prohibits distributing cocaine "knowingly or intentionally," while Article 112a, Uniform Code of Military Justice, 10 USC § 912a, punishes "wrongfully" distributing the drug. However, unknowing or unintentional distribution would not be "wrongful"; so we consider the textual differences immaterial.

5. Cf. *United States v. Boyd,* 885 F.2d 246, 249 (5th Cir.1989) (although indictment did "not track statutory language" concerning unlawfully carrying a firearm during drug trafficking offense, it referred defendant to "statutory source of ... charge against him"; thus, defendant was adequately informed of the charge against him); *United States v. Chilcote,* 724 F.2d 1498, 1505 (11th Cir.) (indictment that did not precisely track the statutory language was nonetheless sufficient to inform defendant of the offense charged, since language of the indictment provided notice of every element of the charged crime and since "[a]ny slight variation" from the statutory language was "cured by the indictment's reference to the statute."), *cert. denied,* 467 U.S. 1218, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984).

6. *See* 28 USC § 451 ("The term 'court of the United States' includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International Trade and any court created by act of Congress the judges of which are entitled to hold office during good behavior."). *But cf. Dettinger v. United States,* 7 MJ 216, 218–19 (CMA 1979). However, whether a court-martial is a "court of the United States" is irrelevant, because the conduct involved here "may be prosecuted in a court of the United States,"—even though it also constitutes conduct for which a servicemember may be tried by court-martial under the third clause of Article 134, UCMJ, 10 USC § 934, proscribing "Crimes and Offenses Not Capital."

military justice by Article 134 and applied in courts-martial.

The canon of strict construction of penal statutes would support such an argument. *See Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 491 n. 10, 105 S.Ct. 3275, 3282 n. 10, 87 L.Ed.2d 346 (1985); *Albernaz v. United States,* 450 U.S. 333, 342, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981). Furthermore, the President's broad power to prescribe the maximum punishments for crimes tried by courts-martial, Art. 56, UCMJ, 10 USC § 856, and his traditional role in defining circumstances of aggravation, *cf. United States v. Curtis,* 32 MJ 252 (CMA 1991), might suggest that, if special penalties are necessary for using or carrying firearms in connection with drug-trafficking crimes, Congress would have intended for the President to deal therewith.

Despite this argument, we have concluded that the conduct prohibited by 18 USC § 924(c)(1) is punishable by courts-martial pursuant to the third clause of Article 134. Since 1968 Congress repeatedly has demonstrated its concern about the use of firearms in connection with the commission of federal crimes. In more recent years, severe penalties have been mandated for using or carrying firearms in connection with a "drug trafficking crime" and "crime of violence." It would be anomalous for us to hold that 18 USC § 924(c) falls outside the scope of the third clause of Article 134, after we have demonstrated no hesitancy in using that clause as authority for the trial by court-martial of other drug-related offenses. *See, e.g., United States v. Reichenbach,* 29 MJ 128. Moreover, we can hold that the conduct which is the subject of § 924(c) is punishable by court-martial without importing into military justice the provisions for mandatory jail terms and the prohibitions of probation, suspended sentence, concurrent sentences, and parole, which seem to have been intended by Congress only to apply to trials in federal district courts.

We conclude, therefore, that the three firearm specifications were adequate to allege violations of Article 134 of the Uniform Code. Likewise, we are satisfied that the Government established the requisite elements of the crimes alleged in these specification.

## II

### A

The prosecution's case hinged on the testimony of a registered source, Specialist Broadbent, who, under instructions from agents of the Criminal Investigation Command, had purchased cocaine from Evans. Broadbent's testimony was corroborated by several prosecution witnesses.[7]

In his own defense, Evans testified that, although he had distributed cocaine to Broadbent and had received money from Broadbent for doing so, his actions took place under duress. This duress was of an unusual kind. According to Evans, Broadbent had been supplying lysergic acid diethylamide (LSD) to appellant's wife, Donna, who was a topless dancer at a bar that Broadbent frequented. Evans had asked Broadbent to cease supplying her with the drug; but Broadbent had refused to do so unless in return Evans obtained cocaine for Broadbent's personal use.[8] Because of appellant's concern for his wife's health and in an effort to prevent Broadbent from continuing to supply Donna with LSD, Evans finally yielded and bought cocaine which, in turn, he delivered to Broadbent.

To rebut the defense theory of duress, the prosecution sought to prove that Evans had been distributing cocaine for some months before the supposed duress had been exercised by Broadbent—and, indeed, before Evans had married Donna. For this purpose, former-Private Richard Van Dersnel had been subpoenaed by the Government to testify.

At an Article 39(a), UCMJ, 10 USC § 839(a), session before the witness took

---

7. The defense had been successful in suppressing a pretrial statement made by appellant.

8. Apparently Evans had access to a source of cocaine that was not available to Broadbent.

the stand, a question was raised whether Van Dersnel—who had not been granted immunity of any type—would refuse to answer questions by either side on grounds of self-incrimination. The witness was called; and both sides—as well as the military judge—examined him to determine to what extent he would answer questions. At the conclusion of this examination, the defense objected to the Government's calling Van Dersnel as a witness because the witness' anticipated refusal to answer questions on cross-examination would deny appellant his Sixth Amendment right of confrontation. The military judge, however, overruled the objection at that point.

During the subsequent direct examination of Van Dersnel before the court members, the prosecutor elicited evidence that, some months before the distributions of cocaine with which Evans was charged, the witness had seen him distribute cocaine in the unit without any threat or coercion from the buyers. At the outset of the cross-examination, defense counsel sought to probe into the witness' role in any of the earlier distributions about which he was testifying; and Van Dersnel invoked the Fifth Amendment. Also, the witness pleaded self-incrimination whenever defense counsel asked whether Evans ever had distributed cocaine to him or whether, instead, Evans consistently had rebuffed the witness' repeated attempts to obtain drugs from him.

At the close of Van Dersnel's testimony, the judge and counsel held another Article 39(a) session. There, defense counsel moved to strike the direct testimony of the witness. Counsel argued: "He can't come in here and testify halfway and let the jury hear half of the story and on the other side, he can turn around and hide behind the Fifth Amendment. Now, that deprives my client—that deprives my client of a full and searching cross-examination, and we ask that that testimony be stricken and the jury be so instructed."

In response, trial counsel pointed out that Van Dersnel's testimony concerned his observation of appellant distributing co-caine in the unit while under "no threat or coercion" by the buyers, and "this directly rebuts the premise raised by the defense that the accused distributed ... under duress...." The prosecutor argued that defense counsel's questions on cross-examination—instead of addressing the matters raised on direct—sought to delve into the witness' own possible wrongdoing and that this effort was beyond the scope of the direct examination.

In denying the defense motion, the military judge's stated rationale for his ruling is confusing, for it is unclear from his explanation whether he viewed the defense questions as proper or improper impeachment under Mil.R.Evid. 608, Manual for Courts–Martial, United States, 1984. However, clearly he believed that, in any event, the probative value of the testimony thought to be adduced by the defense was substantially outweighed by its potential for confusion or waste of time, *see* Mil.R. Evid. 403.

**B**

■ Of course, if the defense questions were an improper attempt at impeachment or if, even though proper, the risk of undue confusion or waste of time substantially outweighed the probative value of such inquiry, the witness' refusal to answer questions that should never have been asked in the first place could not have denied appellant any right of confrontation. *See* Mil.R.Evid. 608 and 403; *cf.* Mil.R. Evid. 401 and 402. In the same vein, if "the matters to which the witness refuses to testify [on cross-examination] are purely collateral," there is no right to have the witness' direct testimony stricken. Mil.R. Evid. 301(f)(2). *See United States v. Lawless,* 18 MJ 255 (CMA 1984); *United States v. Williams,* 16 MJ 333 (CMA 1983); *United States v. Richardson,* 15 MJ 41 (CMA 1983).

■ Even if defense counsel's motion to strike the direct testimony should have been granted—which we do not decide—we are convinced beyond a reasonable doubt that Evans was not prejudiced by the error.

*See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Remai,* 19 MJ 229 (CMA 1985). Although the military judge viewed the defense theory of duress as being reasonably raised by the evidence and gave an instruction thereon, it seems clear that appellant's own testimony almost constituted a judicial confession to several of the crimes.[9] Furthermore, apart from the challenged testimony, evidence of appellant's guilt was overwhelming in quality and in quantity.

The testimony of Van Dersnel, comparatively, added little to the weight of the Government's case. Moreover, we are confident that any weight of this testimony was offset by Van Dersnel's repeated assertion of the Fifth Amendment any time his own conduct came into question and by the military judge's permission for defense counsel affirmatively to argue that the court members should consider these assertions in determining what weight to give to Van Dersnel's testimony.

We resolve this issue adversely to appellant.

### III

The decision of the United States Army Court of Military Review is affirmed.

Judge COX concurs.

SULLIVAN, Chief Judge (concurring):

Nothing in this opinion is to be construed to undermine my belief that, under the Constitution and laws of the United States, a trial and conviction by court-martial under the Uniform Code of Military Justice, 10 USC §§ 801 *et seq.,* is the functional equivalent of a criminal trial by a United States District Court which, upon conviction of the accused, results in a criminal conviction under Federal law.

---

9. In light of the 25–year sentence which the court-martial adjudged, it would also appear that appellant's testimony accomplished little by way of mitigation and may even have contributed to the severity of the sentence.