# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KRIMBILL, BROOKHART, and WALKER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist ERICK I. NUNO**
**United States Army, Appellant**

ARMY 20190066

Headquarters, United States Army Cyber Center of Excellence and Fort Gordon
Edye L. Moran, Military Judge
Colonel John M. McCabe, Staff Judge Advocate

For Appellant: Colonel Elizabeth G. Marotta, JA; Lieutenant Colonel Tiffany D. Pond, JA; Captain Benjamin A. Accinelli, JA; Captain Jason X. Hamilton, JA (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Hannah J. Kaufman, JA; Captain R. Tristan C. De Vega, JA (on brief).

29 September 2020

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued an unpublished opinion and, as such, does not serve as precedent.*

WALKER, Judge:

Appellant argues he was deprived of his Sixth Amendment right to confront his accuser when the military judge refused to strike her testimony after she repeatedly invoked her Fifth Amendment privilege against self-incrimination. We hold that the military judge did not abuse his discretion in refusing to strike the victim's testimony when she invoked her right against self-incrimination as to whether she owned a firearm and whether she was untruthful on a security clearance form.[1]

---

[1] Appellant also asserts that the military judge created a fatal variance when she found him guilty, by exceptions and substitutions, of one of the assaults

(continued . . .)

We review this case under Article 66, Uniform Code of Military Justice, (UCMJ), 10 U.S.C. § 866(c).

## I. BACKGROUND

Appellant's convictions arose from a volatile romantic relationship with a junior female soldier.[2] A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of assault consummated by a battery in violation of Article 128, UCMJ. Appellant was found not guilty of one specification of attempted murder, one specification of aggravated assault, and one specification of assault consummated by a battery in violation of Articles 80 and 128, UCMJ. The convening authority approved the adjudged sentence of confinement for 281 days and a bad-conduct discharge. The convening authority credited appellant with 281 days of pretrial confinement credit.

*A. Appellant and Victim's Violent Relationship*

Appellant and the victim, Specialist (SPC) JB, began a dating and intimate relationship in October 2016. During the course of their relationship, the couple engaged in numerous instances of excessive drinking, by one or both parties, leading to several verbal arguments and physical violence. Appellant's first physical assault against SPC JB occurred in July 2017, less than a year into their relationship. While attempting to prevent SPC JB from leaving a party at appellant's home, he punched SPC JB in the eye to prevent her from driving while intoxicated.[3] In order to protect appellant, SPC JB explained to her sergeant major that her black eye was the result of being hit by a softball, yet she told her commander she did not know the identity of the person who punched her in the face. She also lied to her commander about

---

(. . . continued)
consummated by a battery which was a lesser-included offense of the charged offense of aggravated assault. We have given full and fair consideration to this assignment of error and find it lacks merit.

[2] At the time of their relationship, appellant was a Sergeant (E-5) and the victim was a Private First Class (E-3). Due to their disparity in rank, this relationship violated of the Army's fraternization policy between non-commissioned officers and junior-enlisted soldiers. Army Reg. 600-20, Personnel-General: Army Command Policy, para. 4-14 (6 Nov. 2014).

[3] In April 2018, appellant received non-judicial punishment for fraternizing with SPC JB and other junior soldiers in his unit and for assaulting SPC JB. He was reduced in rank from Sergeant (E-5) to Specialist (E-4). *See* UCMJ art. 15.

having consumed alcohol during the incident, as she was prohibited from consuming alcohol because she was enrolled in the substance abuse program at the time.[4]

Appellant assaulted SPC JB just a few months later in November 2017. Appellant, SPC JB, and a few other individuals gathered at appellant's home for an evening of drinking. The victim did not consume alcohol that evening as she suspected she may be pregnant with appellant's child. A verbal argument in the kitchen turned physical when appellant struck the victim in the face and she fell to the floor. Another male at the gathering ran into the kitchen upon hearing SPC JB yell, "[h]e just hit me," and found her on the floor. Appellant became verbally and physically combative with the responding male. Soon thereafter, the victim confirmed her pregnancy.

The couple's excitement over SPC JB's pregnancy was short-lived upon realizing that the pregnancy could jeopardize both of their careers, given that appellant was still married at the time and because of their rank disparity.[5] Appellant began pressuring SPC JB to terminate the pregnancy and even told her "you keep that child I will never talk to you again, you'll ruin my life, I will not help you raise this child." Specialist JB ultimately terminated the pregnancy in December 2017 in an effort to salvage her relationship with appellant. Specialist JB subsequently learned that appellant had been cheating on her during her pregnancy and her resentment towards appellant led to a break in their relationship. Specialist JB's resulting depression and sadness over the end of her pregnancy and her relationship with appellant led her to begin huffing canned air as a coping mechanism.

Appellant and SPC JB resumed their intimate relationship in March 2018, however, the pattern of physical violence in the relationship quickly returned. On 26 April 2018, appellant and SPC JB attended a birthday celebration in the barracks. Appellant and SPC JB consumed alcohol to the point that appellant was struggling to maintain his balance and SPC JB became loud and belligerent with others at the gathering. Upon leaving the celebration, they returned to appellant's barracks room where appellant wanted to continue the sexual intercourse they began in a stairwell on the way to the barrack's room. Specialist JB's rejection of appellant's sexual advances enraged the appellant causing SPC JB to attempt to leave. When appellant

---

[4] Specialist JB subsequently admitted to an investigating officer to consuming alcohol during the July 2017 incident. As a result, SPC JB's commander initiated an administrative separation against her, which was suspended for six months.

[5] Adultery is punishable under Article 134, UCMJ.

physically blocked SPC JB from leaving his barracks room, she attempted to distract him by knocking the television down hoping he would focus his attention elsewhere. Instead, appellant pushed SPC JB to the floor, got on top of her and physically restrained her.[6] When SPC JB grabbed for her cell phone to call for help, appellant yanked the phone out of her hands and tossed it behind him out of her reach. Another soldier living in the barracks heard noises and yelling coming from appellant's barracks room and called law enforcement. When the military police arrived, they heard a female yelling for help. Upon entering the room they found appellant on top of SPC JB straddling her. Appellant immediately and aggressively questioned the military police as to why they were there and ignored their verbal commands as they worked to restrain him.

### B. Victim's Testimony at Trial

When called as a government witness, SPC JB testified at trial that her relationship with appellant was mutually combative and physically violent. She readily admitted that during her relationship with appellant she suffered from anger issues, occasionally experienced blackouts and did not remember events when intoxicated, and began huffing canned air after she terminated her pregnancy in December 2017. Specialist JB testified that there were occasions in which she punched and pushed appellant. She even described an incident in which she was intoxicated and punched appellant in the face multiple times, pushed him, and possibly tried to push him down a flight of stairs. She also admitted that there was one occasion in which appellant informed her that she had pulled a knife on him and, while she did not recall doing so, she believed it was possible.

The defense was prevented from cross-examining SPC JB about whether she owned a firearm because the military judge ruled that information irrelevant at that point in the trial since the appellant had not yet raised the issue of self-defense. The defense was also prevented from inquiring about SPC JB's disclosure of possible pre-service drug use. During cross-examination, SPC JB explained that she possessed a top secret clearance as a military intelligence soldier and as a pre-requisite to obtaining her security clearance, she completed a questionnaire in July

---

[6] Specialist JB testified that appellant began strangling her and she had difficulty breathing or screaming but that appellant continued to strangle her to the point of "everything going black." Appellant was charged with attempted murder and aggravated assault for these actions but was ultimately found not guilty of those offenses.

2015.[7] The defense attempted to ask SPC JB if she had lied on the questionnaire about pre-service use of marijuana, but was unsuccessful in doing so because the military judge ruled that the question was irrelevant. When further questioned by the defense as to whether she generally lied anywhere in the security clearance form, SPC JB invoked her right to remain silent. The defense asserted it was attempting to test SPC JB's character for truthfulness by inquiring about specific instances of untruthfulness under M.R.E. 608(b). The military judge then denied the defense request to strike SPC JB's testimony pursuant to Military Rule of Evidence (Mil. R. Evid.) 301(e)(1)[8] based upon her asserting her privilege against self-incrimination. *See* UCMJ art. 31(a). The military judge ruled that the issue of whether SPC JB had been untruthful anywhere on a security questionnaire completed in 2015 pertained specifically to the defense's original inquiry as to whether she was untruthful about pre-service drug use and was irrelevant to the charged offenses.

Upon further cross-examination, SPC JB was very forthcoming about her lack of truthfulness on multiple occasions and that her own misconduct could result in her being involuntarily separated from the military thereby exposing her potential bias and motive to fabricate the allegations against appellant.[9] She admitted that she was pending a suspended administrative separation from the military, which did not expire until May 2018, and any misconduct prior to that point would result in her separation from the military. She also believed that her administrative separation would proceed forward if it was discovered that she violated the commander's no-contact order with appellant during the April 2018 incident for which appellant was convicted.

---

[7] United States Office of Personnel Management Standard Form 86, Questionnaire for National Security Positions (revised December 2010) [SF 86]. This form requires disclosure of a significant amount of personal information.

[8] The rule states that when a witness asserts the privilege against self-incrimination, "the military judge, upon motion, may strike the direct testimony of the witness in whole or in part, unless the matters to which the witness refuses to testify are purely collateral." Mil. R. Evid. 301(e)(1).

[9] During cross-examination, SPC JB admitted that she lied to both a non-commissioned officer and her commander about appellant being the cause of her black eye in 2017. She also admitted that she violated her commander's order not to have any contact with appellant on multiple occasions and that she continued to consume alcohol in violation of her substance abuse program.

After the completion of the government's presentation of evidence, the defense renewed its request for SPC JB's testimony to be stricken since she had invoked her privilege against self-incrimination multiple times during her testimony.[10] The military judge ruled that the inquiry into the firearm was "collateral," as it was questionable at that point whether the defense had raised the issue of self-defense, and whether SPC JB was untruthful on a security clearance questionnaire had "no bearing on this case." Given these rulings, the military judge denied the defense request to strike SPC JB's testimony.

Appellant testified on his own behalf during the defense presentation of evidence. The defense then recalled SPC JB as a witness. On direct examination, defense counsel asked SPC JB whether she owned a firearm. SPC JB asserted her privilege against self-incrimination and refused to answer the question.[11] Defense again moved to have her testimony stricken from the record and the military judge denied the defense's motion without additional explanation.

## C. Appellant's Testimony at Trial

On direct examination, appellant testified about the intense emotional, but toxic and volatile, relationship he had with SPC JB. He described various instances in which SPC JB punched him, pushed him, and bit him during their arguments. He also specifically testified about an occasion in approximately March 2017 in which he and SPC JB got into a verbal argument and he asked her to leave his apartment. As SPC JB went to leave the apartment, she opened a drawer in the kitchen, pulled out a gun, and pointed it at him.

---

[10] Specialist JB invoked her privilege against self-incrimination when asked about whether she had ever broken into appellant's home and whether she was facing charges for aggravated assault against a soldier other than appellant. While we acknowledge that appellant references these two invocations in his brief, he does not argue either of these invocations prejudiced his right to confront his accuser and therefore, we will not address them.

[11] We note that SPC JB actually invoked her privilege against self-incrimination as to whether she owned a firearm during her direct-examination when called as a witness by the defense, not during cross-examination. Given that the military judge prevented the defense from asking this question when cross-examining SPC JB, deeming it irrelevant at that point in the trial, we will treat this invocation as if it occurred during cross-examination for purposes of appellant's constitutional right to confront his accuser and M.R.E. 301.

Appellant then provided his version of events for the charged offenses involving his physical assaults of SPC JB, culminating in his description of the April 2018 incident for which he was charged with attempted murder and aggravated assault for strangling SPC JB. Appellant described how SPC JB had consumed alcohol that evening and then huffed canned air upon returning to his barracks room. When he took the canned air from SPC JB, he testified that she became enraged and attempted to leave in order to obtain more canned air. He said he feared for her safety if she left because she had been drinking, had recently expressed thoughts of suicide, and he had seen a gun in the glove compartment of her car earlier that day. He explained that he then physically blocked her and restrained her to prevent her from leaving, at which point the military police arrived. In closing argument, appellant principally attacked SPC JB's credibility, but also claimed the government failed to prove beyond a reasonable doubt that appellant did not establish the affirmative defenses of self-defense, defense of others, and duress.

## II. LAW AND DISCUSSION

While the Confrontation Clause of the Sixth Amendment guarantees an opportunity for effective cross-examination, that right does not extend to "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. Longstreath*, 45 M.J. 366, 374 (C.A.A.F. 1996) (quoting *Deleware v. Fensterer*, 474, U.S. 15, 20 (1985)). We hold that appellant was provided an opportunity for effective cross-examination of the victim and the military judge did not subvert that right in refusing to strike her testimony based upon the two areas of cross-examination in which she invoked her privilege against self-incrimination.

A military judge's decision whether or not to strike the direct examination testimony of a witness who refuses to answer certain cross-examination questions by invoking the right against self-incrimination is reviewed for an abuse of discretion. *Longstreath*, 45 M.J. at 374. Because the alleged error by the military judge affects appellant's Sixth Amendment right to confront and cross-examine witnesses against him, if we find the military judge abused his discretion, we will reverse unless we determine the error was harmless "beyond a reasonable doubt." *United States v. Evans*, 33 M.J. 309, 314–15 (C.A.A.F. 1991) (citing *Chapman v. California*, 386 U.S. 18 (1967)).

The right to have a witnesses' testimony stricken because of a refusal to answer questions on cross-examination is not unrestricted. As the rule states, a party at trial is not entitled to have a witness' direct examination testimony stricken if "the matters to which the witness refuses to testify are purely collateral." Mil. R. Evid. 301(e)(1); *see United States v. Moore*, 36 M.J. 329, 334–35 (C.A.A.F. 1993). The drafter's analysis and case law have clarified what matters are "purely collateral." *See Manual for Courts-Martial, United States* (2016 ed.) [*MCM*],

7

Analysis of the Military Rules of Evidence App'x 22 at A22-7 (describing collateral matters as "evidence of minimal importance (usually dealing with a rather distant fact solicited for impeachment purposes)"). "A matter is collateral when sheltering it would create little danger of prejudice to the accused. Where the privilege reaches the core of the direct testimony or prevents a full inquiry into the credibility of the witness, however, striking of the direct testimony would appear mandated." *Id.; see Moore*, 36 M.J. at 334–35. This limitation on the right to have a witness' testimony stricken for invoking the privilege against self-incrimination prevents harassment of a witness for the sole purpose of getting the witness to invoke. *United States v. Richardson*, 15 M.J. 41, 47 (C.M.A. 1983).

An accused is not entitled to have direct examination testimony stricken just because the witness refused to answer a cross-examination question concerning the witness' "general credibility." *See United States v. Phaneuf*, 10 M.J. 831, 833 (A.C.M.R. 1981) ("[W]here cross-examination is directed to a witness' general credibility rather than to the events which gave rise to the offenses charged, the accused is not entitled to have the direct testimony stricken from the record.") (citing *United States v. LaRiche et al.*, 549 F.2d 1088 (6th Cir. 1977)); *United States v. Dennis*, 16 M.J. 957, 968 (A.F.C.M.R. 1983) ("We have held previously that a matter is collateral when the cross-examination is directed towards the witness' general credibility rather than to the specific events of the offense charged.") (citations omitted); *see also Richardson*, 15 M.J. at 47 (finding that impeachment questions about a witness' "prior misconduct," unrelated to the charged offenses, were purely collateral matters) (citing *Dunbar v. Harris*, 612 F.2d 690, 693–94 (2d Cir. 1979)).

Appellant claims the military judge erred by not striking SPC JB's direct examination testimony based upon her refusal to answer questions about submitting allegedly false information in her July 2015 security clearance questionaire and about whether she owned a firearm. In appellant's view, the former deprived him of an opportunity to fully challenge SPC JB's credibility and the latter deprived him of an opportunity to fully present the affirmative defense of defense of others. We disagree and find the military judge did not abuse his discretion.

Addressing the security form, we find that whether SPC JB provided false information on her security clearance questionaire regarding pre-service drug use, completed years before any of the charged misconduct, is precisely the kind of "purely collateral," "rather distant" impeachment attempt envisioned in Mil. R. Evid. 301(e)(1). While we agree with appellant that SPC JB's credibility was a critical issue at the trial, that does not end the analysis and make every impeachment effort a non-collateral matter. This is especially true in this case where the security clearance questionaire impeachment effort was, at most, an attempted attack on SPC JB's "general credibility" and wholly unrelated "to the events which gave rise to the offenses charged." *Phaneuf*, 10 M.J. at 833.

Nor did SPC JB's invocation concerning her responses on a security clearance questionaire prevent defense counsel from cross-examining her on "the core of [her] direct testimony," which in this case related to appellant's assaults of her, her memory of the assaults, false statements she made to others about the assaults, and any motivations she may have had to fabricate the allegations. *MCM*, Analysis of the Military Rules of Evidence App'x 22 at A22-7; *Moore*, 36 M.J. at 335–36. On these core matters of SPC JB's testimony, she did not invoke her right against self-incrimination or otherwise refuse to answer questions. To the contrary, she readily admitted, among other things, to lying to multiple individuals in her chain of command that appellant was the cause of a black eye and that she violated a no-contact order not to see appellant. As such, we find no abuse of discretion because the military judge correctly ruled that evidence concerning the security clearance questionaire was purely collateral and SPC JB's refusal to answer questions about it did not deprive appellant of the ability to fully attack her credibility on the facts of central importance.

Addressing appellant's second argument, we conclude the military judge did not abuse his discretion by not striking SPC JB's direct examination testimony based upon her refusal to answer defense counsel's question about whether she owned a firearm. As a threshold matter, SPC JB's refusal to answer questions about her firearm ownership did not "reach[] the core of her direct testimony" concerning the April 2018 assault in appellant's barracks room. *MCM*, Analysis of the Military Rules of Evidence App'x 22 at A22-7.

Specialist JB testified that after rebuffing appellant's sexual advances and attempting to leave his room, appellant physically assaulted her, mounted her, and threw her phone across the room. Specialist JB said nothing about a firearm being involved during the altercation or even that a firearm was mentioned in the verbal exchanges between her and appellant. Appellant testified that he prevented SPC JB from leaving his room because he was concerned about her potentially driving while intoxicated and that she might commit suicide with a firearm he had seen in her vehicle's glove compartment earlier in the day. Appellant did not testify about SPC JB making any suicidal ideations in his room prior to leaving, but stated SPC JB had made comments in the past about shooting herself. Asked directly on cross-examination whether appellant himself feared SPC JB possibly using the firearm against him, he stated, "No, sir, not at that point. I was only concerned that she might hurt herself."

On the basis of the record, and notwithstanding defense counsel's closing argument and appellant's arguments on appeal, it is not clear to this court that sufficient evidence was presented to warrant a defense of others instruction under Rule for Courts-Martial 916(e)(5). *See United States v. Jenkins*, 59 M.J. 893, 897–98 (Army Ct. Crim. App. 2004). And because this case was not tried before

9

members, there is no discussion of findings instructions. In any event, we need not decide that question because we conclude any evidence of SPC JB's firearm ownership did not relate to the core of her direct examination testimony and was, at most, "of minimal relevance." *MCM*, Analysis of the Military Rules of Evidence App'x 22 at A22-7. Because it was purely collateral, we conclude the military judge did not abuse his discretion by not striking SPC JB's direct examination testimony based on her refusal to answer questions about whether she owned a firearm.

For the afore-mentioned reasons, we find that appellant was provided an opportunity for effective cross-examination of the victim and the military judge did not abuse his discretion in refusing to strike her testimony because she invoked her privilege against self-incrimination on collateral matters.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Chief Judge KRIMBILL and Senior Judge BROOKHART concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court