UNITED STATES, Appellant

v.

WILLIAM ALBERT SELL, Seaman Apprentice,

U. S. Navy, Appellee

3 USCMA 202, 11 CMR 202

203.

No. 1939

Decided August 14, 1953

CDR E. C. Gordon, USN, for Appellant.

CDR Raymond W. Glasgow, USN, and CDR Howard A. Patrick, USN, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Accused was tried by a special court-martial on a specification charging failure to obey a lawful order, in violation of Article 92, Uniform Code of Military Justice, 50 USC § 686. He was found guilty and sentenced to a bad-conduct discharge, confinement for three months, forfeiture of $25.00 per month for a like period, and reduction in grade to that of seaman recruit. The officer exercising supervisory authority reduced the confinement and forfeitures to two months, but otherwise approved

204

the findings and sentence. The board of review held the specification failed to state an offense under Article 92 of the Code and dismissed the charges because the evidence was insufficient to support what the board considered would be a valid specification. The Judge Advocate General of the Navy certified two questions to this Court for determination. However, before we address ourselves to those particular questions we believe it advisable to discuss our holding on a motion to dismiss which has been denied.

## I

After the certificate had been filed with this Court, appellate defense counsel moved for its dismissal, upon two grounds: first, the certificate was not filed within the time prescribed by the rules of the Court; and second, since the board of review dismissed the charges because the evidence was insufficient to support a valid specification, the case could not be considered as being within the scope of our appellate review powers. We concluded the grounds were not well taken for the reasons hereinafter set out.

The original decision of the board of review was issued on October 22, 1952, and according to the briefs, ■■■■■■ ■ was received by The Judge Advocate General of the Navy on the following day. The certificate for review was filed with this Court on December 8, 1952, which under normal procedure was beyond the time limitation of thirty days set by the Court rules for such action. (See Rule No. 23, Rules of Practice and Procedure, United States Court of Military Appeals.) However, subsequent to the receipt of the original board of review decision and prior to the filing of the certificate with this Court, appellate Government counsel filed with the board of review a motion requesting reconsideration of the decision. This motion was denied on November 24, 1952, and thus the thirty-day period permitted by the Court rules did not expire until December 24, 1952. In United States v. Reeves (No. 453), 1 USCMA 388, 3 CMR 122, decided May 15, 1952, we upheld the authority of boards of review to entertain motions for reconsideration where such motions are made prior to the time an appeal has been lodged with this Court or before The Judge Advocate General has returned the case to the convening authority for further action in accordance with the board's decision. Here the motion was made before any action was taken in the case which would divest the board of review of jurisdiction to reconsider its holding. In so holding we desire to make it crystal clear that we find nothing in the record to lead us to believe that the motion was not made in good faith or that it was made solely for the purpose of delaying final disposition of the case. The motion was timely and reasonable, the board of review was under a duty to consider it on the merits, and The Judge Advocate General could take no action until the motion had been disposed of by the board of review. Accordingly, the thirty-day period did not commence to run until final action by the board of review, and the contention that the certificate should be dismissed on the first ground is without merit.

## II

In its decision the board of review, after passing upon the validity of the specification, stated as follows:

"The evidence in the instant case does not disclose that the accused was given an order before the words set forth in the specification were uttered by him. The evidence adduced would probably support the charge of insubordinate conduct towards a non-commissioned officer in violation of Article 91, UCMJ, but not a violation of the order alleged to have been violated in the instant case.

"Because the specification does not set forth an offense, the findings and sentence of the court, as approved on review below, are set aside. The evidence is insufficient to support a finding on a valid specification under the charge; therefore, a rehearing is not ordered and the charge is dismissed."

Appellate defense counsel contend that the above paragraphs constitute a finding of fact on the part ■■■■■ ■ of the board of review, which renders a review by this Court improper. We have recently disposed of a similar contention. In United States v. Engle (No. 1971), 3 USCMA 41, 11 CMR 41, decided July 10, 1953, it was contended that this Court was precluded from entertaining a case certified to it by The Judge Advocate General where the decision of the board of review was based on matters of fact. While three separate opinions were filed, the members of the court unanimously decided there were issues in that case which required determina-

**205**

tion under the provisions of Article 67(b) (2), Uniform Code of Military Justice, 50 USC § 654. Here, too, we have issues which have been raised properly and pose questions of law. That being so, the motion to dismiss was denied properly on the second ground. We, therefore, turn our attention to the issues certified by The Judge Advocate General.

### III

The first question certified by The Judge Advocate General is as follows:

"(a) Was an offense in violation of Article 92, Uniform Code of Military Justice, alleged in the specification of the charge in this case?"

Article 92, Uniform Code of Military Justice, supra, provides:

"Any person subject to this code who—

(1) violates or fails to obey any lawful general order or regulation; or

(2) having knowledge of any other lawful order issued by a member of the armed forces, which it is his duty to obey, fails to obey the same; or

(3) is derelict in the performance of his duties; shall be punished as a court-martial may direct."

There are a goodly number of rules and regulations governing the behavior of prisoners which are set forth in an exhibit introduced in evidence, but the only one of importance is the following:

"All prisoners shall obey, without reply or argument, the orders of all officers and enlisted men in authority over them and shall speak only concerning duty or need."

The specification upon which the accused was tried was worded as follows:

"In that William Albert Sell . . . having knowledge of a lawful order issued in the U. S. Naval Station Brig Regulations by the Commanding Officer . . . to wit: 'All prisoners shall obey, without reply or argument, the orders of all officers and enlisted men in authority over them and shall speak only concerning duty or need.', an order which it was his duty to obey, did, . . . fail to obey the

same by replying to Marvin Earl Leach . . . a brig chaser on duty, 'If you brig guards would quit standing around . . . and see what was going on there wouldn't be any trouble.', or words to that effect."

Holding the specification insufficient, the board of review stated:

"The specification does not allege an offense. The order applies only to prisoners. There is no allegation that the accused was a prisoner at the time of the commission of the alleged offense. The order set forth in the specification requires prisoners (a) to obey orders of officers and enlisted men in authority without reply or argument, and (b) to speak only concerning duty or need. The specification fails to allege that the words spoken by the accused were in response to an order or were not concerning duty or need."

Because there still remains some uncertainty about the tests to be applied in ascertaining the sufficiency of specifications, we believe it well to reiterate what we have previously announced. The rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. Furthermore, when the pleadings have not been attacked prior to findings and sentence, it is enough to withstand a broadside charge that they do not state an offense, if the necessary facts appear in any form or by fair construction can be found within the terms of the specification. For a certainty, appellate tribunals should not permit a pleading to be challenged for the first time on appeal merely because it is loosely drawn.

The first ground of insufficiency upon which the board of review based its decision poses a problem substantially similar to that considered by us in United States v. Simpson (No. 1938), 2 USCMA 493, 9 CMR 123, decided May 8, 1953. There the specification alleged the accused violated an order prescribing that a white jumper be worn on liberty, but failed to state that accused was on liberty when the order was violated. We stated:

". . . . the portion of the order alleged shows clearly that the wearing of the white jumper was mandatory only while on liberty pass and the specification alleges a violation of the order by not wearing that particular article of the prescribed uniform. The gravamen of the offense is failure to obey an order and we wonder how it can be reasoned that the specification does not allege that offense. The argument that the specification does not show the accused was on liberty fails when it must, of necessity, follow that the accused could not disobey the order without being on liberty. There could not be a disobedience unless the accused was in that status as failure to wear it on other occasions would not be a violation of the order. . . . ."

The same reasoning is applicable here. The whole context of the charge has to do with violation of brig regulations. Those regulations say all prisoners shall obey and that imposes a duty only on that particular class of persons. If the accused was not in that status, he was under no duty to obey that order. The reply was alleged to have been made to a brig chaser on duty and it was pointed to the failure of brig guards to perform their duty. Reasonably construed, the allegations of the specification conclusively show accused's status to be that of a prisoner.

The second ground of inadequacy found by the board of review is that the specification is bad for failure to allege that the words spoken by accused were in response to an order and did not concern duty or need. We can dispose of that reason in short order. The

brig regulations required that prisoners obey those in authority over them without reply or argument and speak only concerning duty or need. The language used by accused is not set out in this opinion because of its character but it is alleged to have been spoken in reply to something said by a brig guard on duty and the expression was far removed from a subject which concerned duty or need. Viewed in this light, it was sufficient to state a failure to comply with a lawful order under Article 92, Uniform Code of Military Justice, supra. Accordingly, the first question is answered in the affirmative.

IV

The second question certified by The Judge Advocate General is as follows:

"(b) Assuming the above issue is answered in the affirmative, was there sufficient evidence, as a matter of law, to support the finding of guilty made by the special court-martial?"

We first call attention to the fact that the board of review did not hold the evidence insufficient to support the charge alleged. What it held was that the evidence would not support what the board of review concluded would be a valid charge. We, however, hold the charge sufficient, so we must test the evidence to determine if it supports the present specification. The record shows the accused was confined at the Orange, Texas, Naval Station Brig. He knew the prison rules and regulations as they had been read to him the day before the alleged offense was committed. On the day in question, the prisoners were returning from the evening meal when the accused broke from the ranks and walked a few feet to a nearby trash can. The rest of the prisoners continued to the cell block as ordered. When the accused returned to his place in the line, the other prisoners had closed in, leaving no space for the accused so he pushed one of the other prisoners out of the way, and told him to get back where he belonged. A commotion resulted and one of the guards, hearing the noise and seeking to end the disturbance, shouted to the accused,

**207**

"Knock it off." When the accused pushed the prisoner a second time, the guard again admonished him to "Knock it off," whereupon the accused replied, "If you brig guards would quit standing around . . . and see what was going on there wouldn't be any trouble."

The elements of the offense as charged are:

1. That a certain lawful order was issued by a member of the armed forces;

2. That the accused had knowledge of the order;

3. That it was the duty of the accused to obey the order;

4. That the accused failed to obey the order.

We are satisfied the evidence establishes all. That a lawful order was issued is clear. Prison rules ▆▆▆▆▆▆ ▆ and regulations are a necessity and while the quoted one may be severe, it is not unlawful. It was violated in two ways. First, a supplemental order was given to accused to quit the altercation which was not obeyed and to which accused replied. Second, his remarks did not concern duty or need. The fact that in the supplemental order the phrase "Knock it off" was employed, does not keep it from being an order. The context of that phrase is well known and it would be quibbling to say it would not be understood as being an order to cease and desist. It was sufficiently well understood by the accused that his reply in vulgar and disparaging language suggested the guard would not be telling him what to do if the guard was familiar with the true conditions. The accused was in a prisoner status, and the regulation required that he obey the order without reply or argument. We sense in the evidence a reply by the accused. Furthermore, he was to speak to the guard only concerning need or duty and there is clearly nothing on the face of the reply which would lend itself to an interpretation that it was spoken for that purpose. Indeed, it is quite the opposite. The accused sought neither help nor assistance. He was not concerned with maintaining law and order. On the contrary, he was apparently trying to interfere with its enforcement. He had broken from the ranks to go to the trash can, even though the prisoners were given a prior opportunity, in the galley, to dispose of any garbage. When he returned to his place in the line, he caused the commotion which brought about the necessity for the supplemental order. When directed to desist he expressed his contempt in language unfit to print. When we consider the evidence in its entirety, it is, as a matter of law, sufficient to support the finding returned by the court-martial. The second question is answered affirmatively.

V

There is one additional matter upon which we desire to comment. It would expedite the review of cases ▆▆▆▆▆▆ ▆ in this Court if boards of review would express clearly when they are exercising their fact-finding powers. We have no disposition to interfere with those powers except as they involve questions of law. So there will be no misunderstanding, we announce our views on that principle. Whether there is sufficient evidence to sustain a finding of guilty is a matter of law. We review a record for that purpose and if there is not, we reverse. We cannot, however, review a record when a court-martial has concluded there is insufficient evidence to sustain a finding and it returns a verdict of not guilty. There is no appeal by the Government from that finding and the record never reaches this Court. The procedure differs when applied to a board of review. There is, in a sense, an appeal by the Government if The Judge Advocate General certifies the case, but our review is limited to questions of law. We cannot determine wherein lies the weight of the evidence nor determine the credibility of witnesses and we cannot overturn a finding of fact made by a board of review, if it is no more than that. However, if the review presents a question of law such as when a board of review reverses a finding of a court-martial because the evidence is insufficient to support it, without making an independent factual determination, then

we have the power and authority and it is our duty to review that narrow issue.

In the case at hand we are reasonably certain the board of review was neither evaluating the credibility of the witnesses nor making an independent finding of fact but was deciding the issue as a matter of law. However, out of an abundance of caution, we will reverse the decision of the board of review but we will not reinstate the findings and sentence. The record is returned to The Judge Advocate General of the Navy for reference to a board of review for further action not inconsistent with our holding.

Chief Judge QUINN concurs.

BROSMAN, Judge (concurring in the result):

I concur in most of what is said in the principal opinion. Particularly do I agree with my brothers when they say, "We first call attention to the fact that the board of review did not hold the evidence insufficient to support the *charge alleged*. What it held was that the evidence would not support what the board of review concluded *would be a valid charge*." (Emphasis supplied). If this is true, what then is the point of inquiring at length into whether the board reached its conclusion in this regard "as a matter of law" or "as a matter of fact"?

In order that an appellate tribunal may act and speak as such—that is, ex cathedra—it must act and speak with respect to a case which is before it. My brothers believe—and so do I—that when the board spoke of evidential insufficiency, it was speaking in terms of purest hypothesis. Its comment had to do not with a case which was before it, but rather with one which was not—for it had earlier held that no valid one was alleged in the specification found on the charge sheet. It was, therefore, not expressing a holding. Instead it was merely making an observation on a professional subject.

However, conceding arguendo that the board was dealing in this instance with a case before it, I am sure that what it said and did is reviewable by us. As I understand relevant portions of the Uniform Code, we may review rulings of a board on questions of mixed law and fact as well as on those of law. The only rulings removed from our consideration are those having to do with pure fact. Here a legal standard was clearly involved in the board's determination that "The evidence . . . does not disclose that the accused was given an order before the words set forth in the specification were uttered by him." The question is, therefore, one embracing a distinct legal element and thus reviewable in this Court.