OPINION OF THE COURT
SCHREIER, Senior Judge:
Contrary to his pleas, members convicted appellant of distribution of cocaine on three occasions, possession of cocaine with intent to distribute, simple possession of cocaine, manufacture of cocaine, conspiracy to manufacture cocaine, and possession of drug abuse paraphernalia. Articles 112a, 81, and 92, UCMJ, 10 U.S.C. §§ 912a, 881, and 892 (1988). The members acquitted appellant of four other separate instances of cocaine distribution. After findings, the military judge dismissed the simple possession specification as multiplicious with the possession with intent to distribute specification. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for 10 years, forfeiture of $300 pay per month for 10 years, and reduction to E-1. Appellant asserts 10 errors involving the reasonable doubt instruction, the admissibility of various evidence, multiplicity, violation of the sanctity of the member’s deliberations, factual sufficiency, sentence severity, cumulative error, and nonverbatim record. Having found error, we dismiss the possession of drug paraphernalia specification and modify the conspiracy specification to attempted conspiracy.
*737 FACTS
The Air Force Office of Special Investigations (AFOSI) suspected appellant was a major drug dealer at Holloman Air Force Base, New Mexico. They targeted two undercover informants, TSgt H and SSgt J, who were also drug users, on appellant in an attempt to make controlled buys and to capture appellant on video manufacturing crack cocaine. Neither informant was aware of the other’s status as an informant. Their efforts were only partially successful. The distributions took place primarily outside of AFOSI observation, and the video equipment malfunctioned. However, when appellant was finally apprehended, he had several marked bills in his possession.
The government’s case at trial was also far from a model presentation. The AFOSI agents attempted to dub the voice from one video onto the original of the second video, which did not record any verbal transmissions. Further, they redacted the names of suspects from original laboratory reports. Also, appellant’s name did not appear on any of the laboratory reports. The AFOSI agents forgot the sequence of events, causing them to misstate the evidence. Additionally, both informants admitted to initially deceiving the AFOSI about the extent of their drug abuse and their continued involvement with drugs.
ADMISSIBILITY OF EVIDENCE
We review challenges to the admissibility of evidence under an abuse of discretion standard. United States v. Ray, 26 M.J. 468, 472 (C.M.A.1988) cert, denied, 488 U.S. 1010, 109 S.Ct. 797, 102 L.Ed.2d 788 (1989); United States v. Davis, 30 M.J. 718, 720 (A.F.C.M.R.1990).

Admissibility of Videotapes

AFOSI technical support set up two pinpoint cameras in SSgt J’s home. One camera functioned correctly, recording both images and sound. Unfortunately, there is minimal action in this recording, the audio quality is poor, and we do not see appellant. The other tape depicts two individuals apparently dividing up some drugs. However, the audio portion did not work and the picture is so snowy as to prevent identification of the participants. In an effort to provide a better presentation, the AFOSI attempted to dub the audio portion of the one tape onto the other tape. Unfortunately, instead of creating a third composite tape, this dubbing was done using the original tapes.
Defense counsel objected to the admissibility of both tapes, calling them manufactured evidence. Special Agent Nash testified that no changes were made to the tape which contained sound but no action. He further stated that the visual portion of the other tape was unchanged. Trial counsel proposed to play only the video portion of the dubbed tape and, at the same time, to play the tape containing the audio portion. The military judge carefully observed the tapes and questioned Special Agent Nash about the contents of the tapes. After being convinced that the evidence, as proposed to be presented to the members, was that originally recorded, she admitted the evidence. She indicated that the government could play both tapes simultaneously only if they could accurately coordinate the vocal and visual portions. When the government was not able to do that, the two tapes were played separately before the members.
The members heard about the malfunctioning equipment. They watched only the video portion of the dubbed tape and both saw and heard the other tape. The military judge did not allow the tapes to go to the deliberation room and ensured that the members had no opportunity to hear the voice on the dubbed tape.
A videotape is admissible if it has been properly authenticated, is relevant, and not unduly prejudicial. United States v. Reichart, 31 M.J. 521, 522-23 (A.C.M.R.1990) pet. denied, 32 M.J. 309 (C.M.A.1991). An original or duplicate is admissible to prove the contents of a recording. Mil.R.Evid. 1002 and 1003.
It goes without saying that we do not sanction the AFOSI’s use of original recordings to attempt a dubbing. Any interference with original evidence creates an appearance of wrongdoing, even when it is done with the best of intentions. Regardless of whether *738 we consider the dubbed tape to be an original videotape or a visual duplicate, the effect is the same. The evidence presented was an accurate depiction of events. We find that the military judge ensured the videotapes were properly authenticated. Mil.R.Evid. 901(a), 1002, and 1003. We further find that even though the poor quality of the tape prevented an observer’s independent identification of appellant, the witnesses established its relevancy and probative value. The military judge did not abuse her discretion under these circumstances.

Admissibility of the Laboratory Reports

As the informants turned purchased drugs over to the AFOSI, the AFOSI took those drugs to the state laboratory for testing. However, instead of providing a separate request identifying the drugs received from each suspect, they combined drugs from different suspects on each analysis request. Furthermore, they redacted the names of all suspects, except one civilian, from the original lab reports. It is unclear when or why this redaction occurred. In any event, appellant’s name was not on either of the laboratory reports offered as prosecution exhibits 9 and 10 which allegedly reported the analysis on cocaine samples previously admitted into evidence. Trial defense counsel argued that the laboratory reports lacked relevance because there was no connection to appellant.
Special Agent Nash described the process of getting the cocaine samples to the laboratory for testing. Although he initially misidentified who took the samples to the laboratory, he later remembered that he had taken the samples for testing. He was further able to correlate the information on the evidence tags, particularly the weight and description of the samples, with the same information on the laboratory reports. Dr. O’Donnell, the forensic chemist who analyzed the samples, again cross-referenced the samples turned in with the samples on the laboratory report. After reviewing all drugs analyzed in the report, the military judge admitted the evidence indicating that, despite the administrative glitches, she was convinced that the laboratory reports were talking about the same evidence that was taken from the appellant and maintained in constant custody by the appropriate officials.
Normally, it is a very routine procedure to admit the results of a laboratory report concerning an alleged drug. However, the routine becomes difficult when individuals attempt to save time by combining samples on one request or redacting original documents. Through a tortuous process, the government convinced the military judge that the laboratory reports in question referred to the evidence informants claimed to have received from appellant. We find that the military judge did not abuse her discretion in admitting the laboratory reports.

Admissibility of AFOSI Source and Target Management Documents

On direct examination, Special Agent Nash testified as to some initial problems with the informants. For example, TSgt H sold crack cocaine to SSgt J, and SSgt J “chipped in” his own money for drugs for personal use when buying for the AFOSI. On cross-examination, defense counsel had Special Agent Nash identify the informants’ AFOSI Forms 14, Source and Target Management Records. These documents described the AFOSI’s contact with the informants on various dates and included remarks questioning their reliability. Defense counsel then sought to admit these documents and the government objected. The military judge denied the admission of the documents, but allowed counsel to use them to refresh the recollection of the witnesses. Special Agent Nash testified as to problems with the informants’ credibility.
The defense again offered the documents as written statements made contemporaneous with the events and kept in the regular course of an investigation. The government objected, arguing the documents were inadmissible hearsay and unnecessary because the agents discussed the documents’ contents. The military judge again refused to admit the evidence, without stating a specific reason. Appellate defense counsel argues this was error, but do not offer a specific exception to support the admissibility of these documents. Rather, they argue that *739 the evidence is relevant and material and should be admitted under Mil.R.Evid. 403.
We conclude that the documents are hearsay and counsel did not proffer a valid exception to the hearsay rule making them admissible. R.C.M. 802. The military judge did not abuse her discretion in refusing to admit them. Furthermore, the witnesses fully discussed the contents of the documents. If there was an error, Special Agent Nash’s testimony on the pertinent portions of the documents rendered any error harmless. Article 59(a), UCMJ, 10 U.S.C. §859(a).
THE DELIBERATIVE PROCESS
After the members deliberated for several hours, the military judge convened an Article 39(a), UCMJ, 10 U.S.C.A. § 839(a),. session to discuss several questions sent to her by the members. At that time, she asked the members if they wanted to break for lunch. The president of the panel responded that they had ordered lunch. Defense counsel did not question this statement either at trial or in the post-trial submissions. Appellant now argues that this statement required the military judge to conduct an inquiry to determine whether the members had failed to follow instructions by either allowing someone into their deliberation room to take a lunch order or by having someone leave the deliberation room while the others were deliberating to place the lunch order.
While a cautious military judge or counsel may have reminded the members that deliberations may occur only when all members are present, under the circumstances of this case, the failure to do so was not error. The military judge instructed the members that they must all be present during deliberations and voting. She placed a bailiff outside the deliberation room for their assistance. The members demonstrated knowledge of the proper procedures when asking questions or requesting a break. The members are “presumed to follow the military judge’s instructions.” United States v. Holt, 33 M.J. 400, 408 (C.M.A.1991). Additionally, there is absolutely no evidence of any extraneous prejudicial information, outside influence, or unlawful command influence that would trigger a separate inquiry into the deliberative process. Mil.R.Evid. 606(b); United States v. Brooks, 42 M.J. 484, 487 (1995) (inquiry into the deliberative process prohibited when none of Mil.R.Evid. 606(b) exceptions triggered); United States v. Loving, 41 M.J. 213, 237-9 (1994) (prohibited inquiry into whether members had followed sentencing instructions). There was no error in the military judge failing to verify that the members had followed her instructions.
SUFFICIENCY OF THE EVIDENCE
Appellant argues that the evidence is factually insufficient to support the findings of guilty. Appellant supports this argument, as he did at trial, by attacking the credibility of the informants and the investigative process.
The test for factual sufficiency is whether after weighing the evidence of record and making allowances for not having personally heard the witnesses testify, we are ourselves convinced of the appellant’s guilt beyond a reasonable doubt. United States v. Turner, 25 M.J. 324, 325 (C.M.A. 1987). The test for legal sufficiency is whether, considering all the evidence in the light most favorable to the prosecution, a reasonable factfinder could find all the essential elements beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
While neither the informants’ behavior nor the investigation went by the rule book, the evidence is legally sufficient and we are ourselves convinced of appellant’s guilt beyond a reasonable doubt except as modified below. Two areas deserve specific discussion, possession of drug paraphernalia and conspiracy to manufacture crack cocaine.

Possession of Drug Paraphernalia

Air Force Regulation (AFR) 30-2, Social Actions Program, paragraph 3-3c(4), 19 August 1988, defines drug abuse paraphernalia as:
Any equipment, product, or material that is used, intended to be used, or designed to be used, in planting, propagating, cultivating, growing, harvesting, *740 manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, or introducing into a human body by injection, inhalation, ingestion, or otherwise, a controlled substance.
Following appellant’s apprehension, the AFOSI conducted a search of appellant’s home and car. No drugs or drug paraphernalia were found. Therefore, no physical evidence of paraphernalia was introduced at trial. Likewise, the specification did not allege the specific paraphernalia appellant was accused of possessing. The testimony concerning paraphernalia observed by the informants was also nonspecific. Finally, the members’ findings do not indicate what items they considered as drug abuse paraphernalia.
This is an unusual case in that neither the specification nor the physical evidence introduced at trial provide this court information as to what drug paraphernalia the appellant was alleged to have possessed. Appellant apparently knew what he was charged with and was prepared to defend against the charge, as there was no request to make the specification more specific or to dismiss it for failing to state an offense. See United States v. Durham, 21 M.J. 232 (C.M.A.1986) (the government is required to provide a bill of particulars on a general specification if requested). Furthermore, a specification challenged for the first time on appeal is viewed with greater tolerance than one which is attacked at trial. United States v. Watkins, 21 M.J. 208, 209 (C.M.A.1986); United States v. Sell, 3 U.S.C.M.A. 202, 11 C.M.R. 202, 1953 WL 2005 (1953). However, the record must indicate the exact nature of the property involved in the criminal offense. United States v. Krebs, 20 U.S.C.M.A. 487, 43 C.M.R. 327, 328, 1971 WL 12787 (1971); United States v. Autrey, 12 U.S.C.M.A. 252, 30 C.M.R. 252, 1961 WL 4432 (1961).
While we are convinced that appellant did not manufacture crack cocaine out of thin air, we do not know what items the members considered paraphernalia. We refuse to speculate as to their findings based on the limited evidence in this case. In an appropriate case with physical evidence, conviction on a general specification may be legally sufficient. See Durham, 21 M.J. at 233 (information from record of trial is sufficient to identify stolen items so as to protect from a second prosecution). But, in this case, we are unable to determine “by implication” or otherwise the specific paraphernalia alleged to be possessed. See U.S. v. Conway, 40 M.J. 859, 861 (A.F.C.M.R.1994), pet. denied, 42 M.J. 211 (C.M.A.1995). Therefore, we find the evidence legally insufficient to support the findings of guilty and dismiss the specification and Charge III.

Conspiracy to Manufacture Cocaine

Appellant was charged with conspiring with SSgt J to manufacture crack cocaine. After SSgt J agreed to work with the AFO-SI, the AFOSI wanted to videotape appellant manufacturing crack cocaine. SSgt J testified that he initially observed appellant manufacture crack cocaine in early May 1992.
The charged conspiracy took place around July 23rd and 24th. SSgt J testified that at some earlier time he told appellant he wanted to go in with him the next time he went to El Paso for a major purchase. He testified that he told appellant that he wanted appellant to show him how to make crack cocaine and that the appellant agreed. As part of this plan, the AFOSI installed cameras in SSgt J’s trailer in an effort to record appellant manufacturing crack cocaine. Furthermore, on July 23rd, the AFOSI supplied SSgt J with $350.00, searched him, and followed his vehicle on part of the trip to El Paso. SSgt J described the trip to El Paso and appellant’s actions in purchasing the drug. He further stated that they discussed manufacturing crack cocaine on this trip. He indicated that appellant said he was going to contribute money towards the purchase. SSgt J stated that he knew the cameras were set up in his trailer and the AFOSI was just waiting for a signal to start recording.
SSgt J further testified that appellant was too tired to manufacture that night and appellant agreed to come back the next day. SSgt J also testified that appellant came by later on the 24th and tried to persuade SSgt J to go elsewhere to manufacture the crack. *741 When SSgt J refused, appellant entered the trailer to pick up his share. At this point, the cameras recorded the action. The visual recording reflects appellant attempting to divide something. SSgt J testified appellant was dividing the cocaine purchased the previous night. The audio recording did not pick up the entire conversation. However, at one point, appellant stated: “There’s one-third soda____ You put that much soda.” SSgtJ asked: “Do I need to get anything?” Appellant replied: “About that much soda ____ (unintelligible). You got some soda?” Appellant indicated that he’d be back. Shortly after that appellant took a share and left. SSgt J went out to purchase baking soda. Appellant never returned to manufacture the crack cocaine and SSgt J turned the remaining cocaine over to the AFOSI.
Traditionally, conspiracy to commit an offense required that all parties to the conspiracy possess the necessary criminal intent. United States v. Earhart, 14 M.J. 511 (A.F.C.M.R.1982) aff'd, 18 M.J. 421 (C.M.A 1984); United States v. West, 13 M.J. 800 (A.C.M.R.1982). However, recently the Court of Appeals for the Armed Forces has taken a fresh look at the rule as it applies to informants who attempt to enter a conspiracy.
The heart of the conspiracy offense “is the agreement with another to commit a criminal act even though there is an impossibility because the individual whom appellee believes [is] part of the conspiracy is a government agent.” United States v. Anzalone, 43 M.J. 322 (1995). As Judge Crawford stated, “In his own mind appellee thought that [there] was an agreement between him and the undercover agent in terms of the potential dangerousness of his conduct and his mental attitude. There clearly was an offense.” Anzalone, 43 M.J. at 325. However, because there can be no true meeting of the minds when the alleged co-conspirator is an undercover agent, appellant is guilty only of an attempt. Anzalone, concurring opinion Judge Wiss, 43 M.J. at 327.
While SSgt J was not the most credible informant, we do not believe he concocted this story framing appellant. It is unlikely that SSgt J would have anticipated that the government’s recording equipment would fail thus preventing specific corroboration of the conspiracy. We are convinced that the appellant entered into an agreement with SSgt J to manufacture crack cocaine. In furtherance of that agreement, he purchased the cocaine, discussed the need for one-third baking soda in the manufacturing process, indicated that he would be back, and left a portion of the drug with SSgt J to complete the manufacturing process at a later time. However, because SSgt J was an AFOSI informant and did not share appellant’s criminal intent, there was no completed conspiracy, only an attempted conspiracy.
We will modify the specification to find appellant guilty of attempted conspiracy. See United States v. Riddle, 41 M.J. 673 (A.F.Ct.Crim.App.1994). We will further modify the specific overt acts alleged in the conspiracy specification to conform with the evidence.
REMAINING ASSIGNMENTS OF ERROR
We have considered appellant’s remaining assignments of error and resolve them against him. There was no error in the reasonable doubt instruction. United States v. Robinson, 38 M.J. 30, 32 (C.M.A.1993). The military judge did not abuse her discretion in denying trial defense counsel’s initial request that the members view the informant’s car, which was used in one of the drug transactions, and suggesting that defense counsel contact the informant’s counsel. Furthermore, the defense did not renew the request after viewing the car. United States v. Ayala, 22 M.J. 777 (A.C.M.R.1986), aff'd, 26 M.J. 190 (C.M.A.1988). Defense counsel’s failure to object to instructions before the members closed to deliberate waived any instructional error, absent plain error. R.C.M. 1005(f). There was no plain error. Specification 7 of Charge I and specifications 1 through 6 of Charge I are not multiplicious. United States v. Teters, 37 M.J. 370 (C.M.A 1993) cert, denied, — U.S.-, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994). There was no cumulative error so as to prevent appellant *742 receiving a fair trial. United States v. Banks, 36 M.J. 150, 171 (C.M.A.1992). Finally, we find that the record of trial was verbatim and any omissions were insubstantial. United States v. Gray, 7 M.J. 296 (C.M.A.1979).
SENTENCE REASSESSMENT
Having dismissed the drug paraphernalia specification and finding appellant guilty of only attempted conspiracy, we must reassess the sentence. We are confident we can determine what sentence the members would have adjudged in light of our action. United States v. Peoples, 29 M.J. 426 (C.M.A.1990). We believe they would have adjudged a sentence of a bad-conduct discharge, nine years confinement, forfeiture of $300.00 pay per month for nine years, and reduction to E-1. Moreover, we find the sentence, as reassessed, appropriate. United States v. Healy, 26 M.J. 394 (C.M.A.1988).
CONCLUSION
We hereby dismiss Charge III and its specification. We approve only so much of the specification and Charge II as provides for a conviction in violation of Article 80, UCMJ, 10 U.S.C.A § 880, as follows:
Specification: In that SERGEANT DWAUNDLE F. BAKER, United States Air Force, 416th Fighter Squadron, did, at or near Alamogordo, New Mexico, on or about 23 July 1992, attempt to conspire with STAFF SERGEANT WDJ to commit an offense under the Uniform Code of Military Justice, to wit: wrongful manufacture of a controlled substance, and in order to effect the object of that attempted conspiracy the said SERGEANT DWAUNDLE F. BAKER did procure a quantity of cocaine, tell STAFF SERGEANT WDJ that he needed one-third baking soda for use in the manufacturing process, and distributed to STAFF SERGEANT WDJ the cocaine that would later be manufactured into crack cocaine.
We conclude that the findings, as modified, and sentence, as reassessed, are correct in law and fact, and the reassessed sentence is not inappropriate. Accordingly, the modified findings of guilty and the reassessed sentence are
AFFIRMED.
Judge SENANDER concurs.