# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CARLTON, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 DANIEL I. ENRIQUEZ**
**United States Army, Appellant**

ARMY 20110921

Headquarters, National Training Center and Fort Irwin
Kwasi L. Hawks, Military Judge
Major Scott A. DiRocco, Acting Staff Judge Advocate (pretrial)
Lieutenant Colonel Gail A. Curley, Staff Judge Advocate (post trial)

For Appellant:  Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Richard E. Gorini, JA; Captain James S. Trieschmann, Jr., JA (on brief).

For Appellee:  Lieutenant Colonel Amber J. Roach, JA; Major Robert A. Rodrigues, JA; Captain Steve T. Nam, JA (on brief).

28 June 2013

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

Per Curiam:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of attempted use of methamphetamine, disobeying a lawful order from a superior commissioned officer, aggravated sexual assault consummated by a battery, assault consummated by a battery, and two specifications of disorderly conduct, in violation of Articles 80, 90, 120, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 890, 920, 928, 934 (2012) [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge and confinement for twenty-one months. The convening authority approved the adjudged sentence and credited appellant with 225 days of confinement credit.

This case is before us for review under Article 66, UCMJ. Appellate counsel raised one issue to this court and appellant personally raised matters pursuant to

*United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982). We find the issue raised by appellate counsel merits discussion and relief. Those matters personally raised by appellant are without merit. Further, we find an additional matter concerning the sufficiency of the Article 134, UCMJ, specifications, not raised before this court, merits relief.

In his only assignment of error, appellant alleges the staff judge advocate (SJA) committed prejudicial error when she failed to comment on allegations of legal error raised by appellant in his post-trial clemency matters. Specifically, following appellant's court-martial, his defense counsel submitted matters on appellant's behalf pursuant to Rules for Court-Martial [hereinafter R.C.M.] 1105/1106 to the convening authority (CA). In his memorandum, counsel alleged the evidence raised the defense of mistake of fact as to consent and the government failed to disprove the defense beyond a reasonable doubt. Thus, appellant should have been acquitted of aggravated sexual assault. Appellant's trial defense counsel alleged:

> (3) Rule for Courts-Martial (R.C.M.) 916(j) provides a defense that abdicates criminal responsibility when there is a mistake of fact involved; here, a mistake of fact as to consent when he started to have sex with [TK]. In this case, [appellant] honestly believed [TK] consented and the mistake was reasonable under all the circumstances . . . . Based on the above, [appellant] respectfully asks that you dismiss the guilty finding of aggravated sexual assault due to his mistake of fact as to [TK's] consent.

In his personal letter to the convening authority, appellant stated he "was still not sure . . . why I was [convicted of] aggravated sexual assault toward[s] my wife when she even said that our sex life during our marriage was rough" and "I never one time thought I was doing anything wrong." Appellant also noted his wife never outwardly indicated her unwillingness to participate in the sexual encounters and he should not be labeled a sex offender.

In the addendum to her post-trial recommendation, the SJA acknowledged appellant and his trial defense counsel submitted matters pursuant to R.C.M. 1105/1106 and the convening authority must consider those matters. To us, a complaint regarding the misapplication of a mistake of fact defense sounds in law more than in pure clemency. Accordingly, assuming without deciding that the submission raised a legal issue, the SJA erred by not commenting on it and stating whether or not corrective action was required. See R.C.M. 1106(d)(4).

Pursuant to *United States v. Hill*, 27 M.J. 293, 297 (C.M.A. 1988), we are "free to affirm when a defense allegation of legal error would not foreseeably have

2

led to a favorable recommendation by the [SJA] or to corrective action by the [CA]." However, based on the record before us, we are unable to definitively find that a properly prepared addendum to the staff judge advocate's post-trial recommendation (SJAR) would have had no effect on the convening authority's exercise of his discretion. *See Hill*, 27 M.J. at 297. This is particularly true in this case where the addendum reflected that appellant's request for disapproval of his aggravated sexual assault conviction was based only upon his desire to not be required to register as a sex offender. This painted an incomplete picture of appellant's request. As such, we will take appropriate action in our decretal paragraph.

While not raised by appellant, under the totality of unique circumstances found in this case, including a previously imposed Article 15, UCMJ, for behavior which arguably overlaps the charged disorderly conduct, a simultaneously charged Article 80, UCMJ, offense which also arguably overlaps that same disorderly conduct, and an extensive discussion after announcement of findings in a failed attempt to clarify the exact disorderly conduct of which the appellant then stood convicted, we find the general disorder specifications under Article 134, UCMJ, failed to provide sufficient notice to appellant of the criminal conduct to be defended against at trial. It became obvious at trial that the parties and the military judge were not in agreement regarding what specific behavior constituted the basis for the disorderly conduct offenses.

The specifications at issue allege:

> Specification 2 of Charge VII: In that [appellant], U.S. Army, was, at or near Fort Irwin, California, on or about 1 February 2011, disorderly, which conduct was prejudicial to good order and discipline or was of a nature to bring discredit upon the armed forces.

> Specification 3 of Charge VII: In that [appellant], U.S. Army, was, at or near Fort Irwin, California, on or about 15 February 2011, disorderly, which conduct was prejudicial to good order and discipline or was of a nature to bring discredit upon the armed forces.

The military is a notice pleading jurisdiction. *United States v. Fosler*, 70 M.J. 225 (C.A.A.F. 2011) (citing *United States v. Sell*, 3 U.S.C.M.A. 202, 206, 11 C.M.R. 202, 206 (1953). "The true test of the sufficiency of a specification is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." *Sell*, 3 U.S.C.M.A. at 206, 11

C.M.R. at 206. Those facts that make the accused's conduct criminal ordinarily should be alleged in the specification. R.C.M. 307(c)(3) discussion.

While we do not hold that a specification similar to the sample specification found in the *Manual for Courts-Martial, United States* (2012) [hereinafter *MCM*], pt. IV, ¶ 73, which simply alleges an accused was disorderly without detailing the underlying behavior is always deficient, we do find here that the record indicates appellant was not provided with sufficient notice of the disorderly conduct which the government sought to criminalize.

The confusion surrounding the disorderly conduct charges first became apparent when the military judge voiced concern over those specifications by stating:

> So, it would appear that in both cases, the essential conduct that the government seeks to punish is the wrongful solicitation of a married woman by a married man. And then in common with that is the solicitation of any person to engage in prostitution. The gravamen of the disorderly conduct in both Specifications 2 and 3 could be captured by that description.

This dialogue occurred against a backdrop of the Specification of Charge I, which similarly alleged the appellant attempted to wrongfully entice a person not his spouse to engage in sexual intercourse with him in exchange for money, an offense of which the appellant was ultimately acquitted. Then, when discussing what behavior the Article 134 specifications were intended to address, the government conceded the targeted misconduct could have been charged in a number of ways, but that they were only pursuing a conviction for an offense with a maximum punishment of one month's confinement without further clarification of what constituted the "disorderly conduct."

Significantly, after announcement of findings of guilty to the disorderly conduct specifications, the military judge acknowledged that both parties had requested "clarification regarding the specific conduct that was subject to the court's findings with regards to Specifications 2 and 3 of Charge VII." It is a strong indicator of trouble when both parties voice confusion as to what conduct a particular charge covers at such a late stage of the proceedings. All the same, clarity was sought so that appropriate credit pursuant to *United States v. Pierce,* 27 M.J. 367 (C.M.A. 1989) could be calculated for a prior Article 15, UCMJ.

4

The government argued the charges appellant faced at his previous Article 15, UCMJ, proceeding did not address the exact same disorderly conduct for which appellant had just been prosecuted.[1] While admitting the Article 15 and the charged specifications involved the same time period, same location, and same people, the government maintained the sexually related misconduct addressed by the Article 15 was distinct from the sexually related disorderly conduct appellant faced at court-martial. Contrary to the government's proposal to parse and dice the misconduct, defense counsel maintained the specifications covered the same conduct as the previous Article 15 and appellant should accordingly receive *Pierce* credit. These positions presented a stark contrast between the views of the government and the appellant as to the conduct on which appellant had received notice to defend against.

The military judge did little to resolve the increasing disconnect. He stated, "There's some overlap between Specifications 2 and 3 of Charge VII and some of the punishment of the Article 15. While it doesn't encompass all of it, there's some overlap. Therefore, there's some call for the court's now consideration of [the] prior Article 15's mitigation." Although the military judge declared he would consider the Article 15 "with regard to the application of *Pierce* credit if any," he never definitively ruled and stated for the record the extent of the "overlapping misconduct," whether he gave *Pierce* credit, and, if so, the amount of that credit.[2]

In this case, the government may have prosecuted certain behavior, appellant may have defended against different but related behavior, and the military judge may

---

[1] The charges set forth in the Article 15, UCMJ proceeding included:

> In that [appellant] did, at or near Fort Irwin, California, on or about 1 February 2011, unlawfully enter a dwelling, the property of PV2 [AB] with intent to commit a criminal offense, to wit: sodomy therein.

> In that [appellant] did, at or near Fort Irwin, California, on or about 14 February 2011, wrongfully arrange for [MH] to engage in an act of sodomy with you.

> In that[appellant] did, at or near Fort Irwin, California, on or about 1 February 2011, wrongfully arrange for [BB] to engage in an act of sodomy with you.

[2] While appellant very well may be entitled to *Pierce* credit, this issue is rendered moot by our decision to set aside the findings of guilty to the "overlapping" disorderly conduct specifications.

have convicted on yet other behavior. We cannot countenance such confusion. Based on the specifications at issue and the record before us, we conclude appellant was not provided sufficient notice of the criminal conduct for which he was being prosecuted. The specifications merely alleged appellant committed disorderly conduct but failed to notify him of the exact conduct deemed to be disorderly. Such a vague pleading, combined with the other circumstances, did not enable the accused to prepare an adequate defense and does not protect him from double jeopardy. This is especially true where the government alleged that some misconduct occurring on a specific date was included in the specification while other misconduct was not. An allegation under these circumstances "totally deprives the accused, appellate reviewing agencies, and those who may in the future examine the charge, of any information concerning the nature of the [offense]" and is legally insufficient. *United States v. Curtiss*, U.S.C.M.A. 402, 403, 42 C.M.R. 4 (1970) (citing *United States v Autrey*, 12 U.S.C.M.A. 252, 254, 30 C.M.R. 252 (1961)).

**CONCLUSION**

The findings of guilty to Specifications 2 and 3 of Charge VII and Charge VII are set aside. The sentence is set aside. The same or different convening authority may order a rehearing on the set-aside specifications and charge and the sentence. If the convening authority determines that a rehearing on those specifications and charge is impracticable, he may dismiss the specifications and charge and order a rehearing on the sentence only. If the convening authority determines that a rehearing on the sentence likewise is impracticable, he may reassess the sentence in accordance with *United States v. Reed*, 33 M.J. 98 (C.M.A. 1990). Regardless, a new SJAR and new initial action by the same or different convening authority in accordance with Article 60(c)-(e), UCMJ is required.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court